PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 8/19/96**

TENTH CIRCUIT

_____

UNITED STATES OF AMERICA, )
)
          Plaintiff-Appellee, )
) No. 95-3061
    v. )
)
VICTOR LYN HAWLEY, )
)
          Defendant-Appellant. )

_____

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 94-CR-40039)

_____

Submitted on the briefs:[*]

David J. Phillips, Federal Public Defender and Marilyn M. Trubey, Assistant
Federal Public Defender, Topeka, Kansas, for Defendant-Appellant.

_____

[*]   After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore
ordered submitted without oral argument.

Randall K. Rathbun, United States Attorney and Gregory G. Hough, Assistant United States Attorney, Topeka, Kansas, for Plaintiff-Appellee.

———

Before **BALDOCK**, **EBEL**, and **HENRY**, Circuit Judges.

———

**EBEL**, Circuit Judge.

On August 4, 1994, a grand jury returned a two-count indictment against Defendant-Appellant Victor Lyn Hawley and James Lopez Guardado, charging that on or about the 25th day of July, 1994, through the 28th day of July, 1994, they conspired to possess with intent to distribute 100 grams or more of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846; and that they possessed with the intent to distribute 100 grams or more of methamphetamine, to wit: approximately 440 grams of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). On November 3, 1994, Hawley entered a plea of guilty to Count I for conspiracy and agreed to cooperate with law enforcement. In exchange, the government dropped Count II. Hawley was sentenced on February 6, 1995. His sentence included a term of incarceration of 97 months. Hawley now appeals, alleging that the government breached its plea agreement "not to oppose" certain sentencing adjustments favorable to the Defendant and to file a motion for downward

adjustment for substantial assistance "if appropriate." Hawley also claims that enhancing his offense level by two points for obstruction of justice constituted double jeopardy because judgment previously was entered against him on the same conduct when he violated his appearance bond. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm in part, reverse in part and remand for proceedings consistent with this opinion.

## BACKGROUND

On July 29, 1994, Hawley and Guardado had their first appearances before United States Magistrate Judge Ronald C. Newman relating to the above mentioned charges. At Hawley's detention hearing on August 1, 1994, Judge Newman released Hawley on a $50,000 unsecured bond payable to the United States upon failure to appear as ordered. In the appearance bond, Hawley agreed to appear at all scheduled appearances in the case. Judge Newman also advised Hawley that his next appearance date was August 16, 1994, at 9:00 a.m. at the U.S. District Court in Topeka, Kansas for arraignment.

On August 16, 1994, Hawley failed to appear at his arraignment. On that same day, Judge Newman signed an order forfeiting Hawley's bond and directing issuance of a bench warrant for Hawley's arrest. On August 24, 1994, United States District Court Judge Sam Crow signed an order granting the United States'

motion for judgment on bond forfeiture in the Hawley matter. Hawley was eventually arrested again on September 9, 1994, in Arkansas, and he was arraigned on September 30, 1994, before Judge Newman. After a hearing on the United States' motion for revocation of Hawley's pretrial release, on October 6, 1994, Judge Newman revoked Hawley's pretrial release and entered an order of detention.

On November 3, 1994, Hawley, as part of a plea agreement with the United States Attorney's office, entered a plea of guilty to Count I of the indictment. At that time, Hawley stipulated to facts sufficient to prove him guilty beyond a reasonable doubt of the offense charged in Count I of the indictment.[1] In addition to pleading guilty to Count I of the indictment, Hawley agreed to provide information about the matters charged in the indictment in this case and to submit to a polygraph examination on the information provided. In exchange for Hawley's plea, the government agreed to dismiss Count II of the indictment; "to not oppose that [Hawley] receive a three level reduction" for acceptance of responsibility; "to not oppose that [Hawley] not receive a two level enhancement for obstruction of justice;" and "if appropriate, prior to sentencing," to file a

---

[1] Those facts were summarized as follows: On July 28, 1994, Hawley and Guardado were detained during a routine traffic stop by a Kansas State Highway Trooper. The trooper discovered 440 grams of methamphetamine in the car and Hawley ultimately acknowledged participation in a conspiracy to distribute that methamphetamine.

-4-

motion pursuant to U.S.S.G. § 5K1.1 for any substantial assistance provided pursuant to the agreement.

Prior to sentencing, Hawley learned that the government did not intend to file a motion for a downward departure based on substantial assistance. He then filed a motion to enforce the plea agreement because he had provided information to law enforcement. In addition, he filed a motion to continue the sentencing hearing scheduled for January 20, 1995. The district court, in chambers, held a hearing concerning matters that were relevant to Hawley's ability to provide information pursuant to the plea agreement. Hawley argued that he had been debriefed by the DEA subsequent to his entering a plea, and that he had provided information regarding drug activities in California and Arkansas. He further argued that, notwithstanding assurances from certain law enforcement officials in Arkansas that Hawley was still valuable to investigations there, his ability to provide information regarding drug activities in Arkansas had been compromised by law enforcement, and he suggested there was reason to suspect that law enforcement themselves were involved in the drug activities. Hawley requested that the court order an investigation to determine whether his "attempted" cooperation had been undermined by law enforcement in any way.

The court denied the motion to enforce the plea agreement on the government's representation that no assistance had been provided to date that

would be deemed substantial. However, the court continued the sentencing hearing to allow for an investigation into whether federal agents and/or local law enforcement agents in Arkansas were engaged in any misconduct which precluded Hawley's cooperation.

The matter proceeded to sentencing on February 6, 1995. Hawley again filed a motion to continue the sentencing hearing because reports from the earlier investigation had not been completed. In addition, he filed a renewed motion to enforce the plea agreement, incorporating the arguments from the earlier motion and stating in addition that he was now willing to provide the government with any information it desired, including information concerning his brother's drug activities which he had declined to provide earlier. The government responded that the investigation by the FBI had preliminarily indicated that the allegations made at the previous hearing were unsubstantiated. The government questioned Hawley's good faith claim of cooperation and stated that the information he had provided was not substantial and did not merit a downward departure motion. The court denied both of the motions made on behalf of Hawley.

The court then determined the total offense level applicable to Hawley to be 30. In calculating this base offense level, the court determined that a two-point enhancement for obstruction of justice was merited due to Hawley's failure to appear at a prior court hearing. Further, the court concluded that Hawley was

not entitled to a downward adjustment for acceptance of responsibility. Hawley argued that the obstruction enhancement was precluded under the Double Jeopardy Clause of the Fifth Amendment because judgment in the amount of $50,000 had been taken against him on his appearance bond based on conduct also used to apply the enhancement. Further, Hawley argued that he was entitled to an adjustment for acceptance of responsibility because he had cooperated with authorities subsequent to his arrest and had timely entered a plea of guilty.

The government acknowledged its obligations under the plea agreement not to oppose an adjustment for acceptance of responsibility and not to argue in favor of an obstruction of justice enhancement. However, the government went on to note that it was not aware of certain facts contained in the presentence report at the time of the plea agreement, and that the record did not indicate that this was a "circumstance meriting any extraordinary credit." In light of the government's position, Hawley requested that he be allowed to withdraw his plea due to the government's violation of the terms of the plea agreement. The court denied that request, concluded that the base offense level was accurately calculated at 30, and sentenced Hawley to the custody of the Bureau of Prisons for a term of 97 months.

On appeal, Hawley argues that: (1) He was subjected to double punishment for the same offense in violation of the Double Jeopardy Clause when the district

court enhanced his base offense level by two levels for obstruction of justice after previously entering judgment against him on his appearance bond for the same conduct; (2) The district court erred in not granting him a reduction in his base offense level for acceptance of responsibility; (3) The district court erred in denying his Motion To Enforce The Plea Agreement; and (4) The district court erred in denying his Motion To Withdraw His Guilty Plea.

## DISCUSSION

<u>DOUBLE JEOPARDY</u>

The Sentencing Guidelines provide for a two-point increase in the base offense level "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. The district court assessed this enhancement against Hawley because he failed to appear for arraignment as ordered. Hawley contends this constitutes double punishment in violation of the Double Jeopardy Clause because judgment previously was entered against him on his $50,000 appearance bond as a result of the same conduct. We review the district court's factual findings as to the obstruction of justice under the clearly erroneous standard, and review <u>de novo</u> the district court's legal interpretation of the Sentencing Guidelines. <u>United States v. Janus Industries</u>, 48

F.3d 1548, 1559-60 (10th Cir.), <u>cert. denied</u>, 116 S. Ct. 87 (1995). We also review <u>de novo</u> the district court's legal conclusion regarding double jeopardy. <u>United States v. Cardall</u>, 885 F.2d 656, 665 (10th Cir. 1989).

The Fifth Amendment guarantee against double jeopardy protects against a second prosecution for the same offense and against multiple punishments for the same offense. <u>North Carolina v. Pearce</u>, 395 U.S. 711, 717 (1969). Hawley's double jeopardy argument is based solely upon the latter protection against multiple punishments for the same offense. We have recognized that the forfeiture of a bail bond is a civil proceeding arising from a criminal one. <u>United States v. Brouillet</u>, 736 F.2d 1414, 1415 (10th Cir. 1984). However, the fact that a sanction is fairly characterized as "civil" does not mean that it can never constitute punishment for the purposes of double jeopardy analysis. The Supreme Court in <u>United States v. Halper</u>, 490 U.S. 435, 447-48 (1989), stated that:

> [T]he labels "criminal" and "civil" are not of paramount importance. It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both may be served by criminal penalties . . . . [T]he determination of whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.

The rule announced in Halper is that a civil sanction may be considered punitive when it subjects the offender to a "sanction overwhelmingly disproportionate to the damages he has caused . . . [and when] the civil penalty . . . bears no rational relation to the goal of compensating the Government for its loss . . . ." Id. at 449; see also Department of Revenue v. Kurth Ranch, 114 S. Ct. 1937, 1947-48 (1994) (relying on Halper to conclude that a state tax on illegally grown marijuana exacted punishment and not merely revenue).[2]

The government argues that Hawley's bail bond was a form of contract between the government on the one hand and Hawley and his surety on the other. When Hawley violated the terms of his pretrial release he breached the contract with the government and the judgment entered in the government's favor on the appearance bond was the government's remedy under the contract. The government argues that this civil sanction served a "remedial purpose," and was reasonably related to the government's damages. We agree.

The Court in Halper stated that courts should undertake a "particularized assessment" of the civil penalty imposed and the purposes that the penalty may

---

[2] The recent Supreme Court case of United States v. Ursery, ___ U.S. ___, No. 95-345, 1996 WL 340815, *16 (June 24, 1996), is not directly dispositive because it held that in rem civil forfeitures do not implicate the Double Jeopardy Clause. Here, there was no in rem forfeiture because Hawley's appearance bond was unsecured; rather upon his breach of the terms of the bond an in personam judgment in the $50,000 face amount of the bond was entered against him.

-10-

fairly be said to serve when determining whether a given civil sanction constitutes punishment. 490 U.S. at 448. In making such an assessment, we note that not every monetary penalty exceeding actual financial loss is per se punitive. "[T]he government is entitled to rough remedial justice, that is, it may demand compensation according to somewhat imprecise formulas, such as reasonable liquidated damages or a fixed sum plus double damages, without being deemed to have imposed a second punishment for the purpose of double jeopardy analysis." Id. at 446.

In this case, Hawley's failure to appear for a scheduled court proceeding delayed the timely disposition of this case. A warrant had to be issued for Hawley's arrest in order to bring him back to the District of Kansas. Based on these facts, we conclude that the $50,000 judgment for violating the appearance bond was not overly disproportionate to the government's anticipated costs associated with being forced to delay Hawley's criminal proceeding and hunt him down. Therefore, that judgment was remedial and not punitive, posing no double jeopardy bar to the enhancement of Hawley's sentence under U.S.S.G. § 3C1.1. Cf. United States v. Barger, 458 F.2d 396, 396-97 (9th Cir. 1972) (forfeiting bail compensates for damages and is deemed civil, not criminal in nature; hence, it does not implicate the Double Jeopardy Clause when the defendant is also convicted of the crime of jumping bail); United States v. Garcia-Trevino, 843 F.

Supp. 1134, 1134-35 (S.D. Tex. 1994) (applying <u>Halper</u> and concluding that "the entry of a civil judgment forfeiting a bond for failure to appear at trial solely serves a remedial purpose, not punishment of the defendant, and therefore is not a bar to subsequent criminal prosecution for failure to appear based on the same conduct").

Furthermore, in light of the Supreme Court's decision in <u>Witte v. United States</u>, 115 S.Ct. 2199 (1995), we are compelled to conclude that the enhancement for obstruction of justice was not punishment for any conduct other than the conduct to which Hawley pleaded guilty. In <u>Witte</u>, the defendant pleaded guilty to a federal marijuana charge. 115 S.Ct. at 2203. The presentence report calculated the base offense level under the Sentencing Guidelines by aggregating the total quantity of drugs involved, including drugs relating to uncharged criminal conduct, in this case, cocaine. <u>Id.</u> Under the Guidelines, the sentencing range for an offense is calculated on the basis of all "relevant conduct" in which the defendant was engaged and is not limited to the conduct underlying the offense of conviction. U.S.S.G. § 1B1.3. When the defendant was subsequently indicted for offenses relating to his involvement with cocaine, he moved to dismiss the charges, arguing that he had already been punished for the offenses because the cocaine had been considered as "relevant conduct" at his marijuana

-12-

sentencing.  Witte, 115 S.Ct. at 2203-04.  Thus, defendant argued, the subsequent prosecution on cocaine charges violated the Double Jeopardy Clause.

The Supreme Court rejected this argument, holding that "use of evidence of related criminal conduct to enhance a defendant's sentence for a separate crime within the authorized statutory limits does not constitute punishment for that conduct within the meaning of the Double Jeopardy Clause."  Id. at 2206.  Furthermore, "it makes no difference . . . whether the enhancement occurred in the first or second sentencing proceeding."  Id.

> The relevant conduct provisions of the Sentencing Guidelines, like their criminal history counterparts and the recidivism statutes . . ., are sentencing enhancement regimes evincing the judgment that a particular offense should receive a more serious sentence within the authorized range if it was either accompanied by or preceded by additional criminal activity . . . .  We hold that, where the legislature has authorized such a particular punishment range for a given crime, the resulting sentence within that range constitutes punishment only for the offense of conviction for purposes of the double jeopardy inquiry.

Id. at 2208.  We conclude that the facts of this case are governed by Witte.  The enhancement of Hawley's sentence under U.S.S.G. § 3C1.1 was punishment for the underlying offense to which he pleaded guilty, not punishment for failing to appear.  See also United States v. Carey, 943 F.2d 44, 46-47 (11th Cir. 1991) (citing several other circuits and holding that a two level increase for obstruction of justice in first case relating to credit card fraud does not constitute punishment

-13-

for failure to appear and does not bar a later prosecution for failing to appear), cert. denied, 503 U.S. 987 (1992).

ACCEPTANCE OF RESPONSIBILITY

Hawley next argues that the district court erred in not granting him a reduction in his base offense level for acceptance of responsibility. We review for clear error the district court's refusal to grant a reduction in offense level for acceptance of responsibility. United States v. Grey, 56 F.3d 1219, 1223 n.1 (10th Cir. 1995). "We recognize that '[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review.'" United States v. Gacnik, 50 F.3d 848, 853 (10th Cir. 1995) (quoting U.S.S.G. § 3E1.1, comment. (n.5)) (alteration in original).

U.S.S.G. § 3E1.1 provides in relevant part as follows: "(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." Application Note 3 to U.S.S.G. § 3E1.1 provides that entry of a plea of guilty prior to the commencement of trial combined with admission of the conduct of the offense of conviction and any other additional relevant conduct constitutes significant evidence of acceptance of responsibility. Application Note 3 goes on to say, however, that this evidence may be

-14-

"outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility," and that the guilty plea does not entitle the defendant to an adjustment as a matter of right. Application Note 4 then advises that "[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply."

The district court denied the § 3E1.1 downward adjustment for acceptance of responsibility on the basis of Application Note 4, concluding that there were no exceptional circumstances warranting a § 3E1.1 adjustment in light of Hawley's conduct of flight that gave rise to an upward enhancement for obstructing justice under § 3C1.1. Hawley argues that, if he loses his double jeopardy challenge to the upward adjustment for obstructing justice (as he has), this is nevertheless one of those "extraordinary cases" where an adjustment under both §§ 3C1.1 and 3E1.1 is appropriate. He relies principally on United States v. Hopper, 27 F.3d 378, 383 (9th Cir. 1994), where the Ninth Circuit held that an enhancement for obstruction of justice is not inconsistent with an acceptance of responsibility adjustment "when a defendant, although initially attempting to conceal the crime, eventually accepts responsibility for the crime and abandons all attempts to obstruct justice." Hawley contends that the conduct constituting obstruction of

-15-

justice did not continue after he was received back into custody in September, 1994, and that upon his return to Kansas in late September, 1994, he immediately entered into negotiations with the government to provide information concerning other criminal activity and entered his plea of guilty. Thus, the conduct forming the basis for the obstruction of justice enhancement ceased and was replaced by conduct indicating a clear acceptance of responsibility.

In determining whether a defendant has "accepted responsibility," we have held that "the sentencing court can consider if there has been a 'voluntary termination or withdrawal from criminal conduct or associations.'" United States v. Amos, 984 F.2d 1067, 1073 (10th Cir. 1993) (quoting U.S.S.G. § 3E1.1, Application Note 1(b)). In this case, assuming arguendo that Hawley accurately characterizes his conduct after being returned to Kansas, there still remains the question as to whether his "good conduct" was in fact voluntary. Hawley fails to appreciate the fact that he had been arrested, released on an appearance bond, and then violated his appearance bond. He had to be returned to Kansas by law enforcement; he did not return on his own. Conduct amounting to escape or violation of an appearance bond is certainly evidence of failure to accept responsibility, and this fact alone provides adequate foundation for the district court's decision. See id. at 1072-73 (concluding that defendant's attempted escape from jail while awaiting sentencing supported application of enhancement

for obstruction of justice and provided adequate grounds for denial of downward adjustment for acceptance of responsibility).  Thus, notwithstanding Hawley's emphasis on Hopper and his conduct after returning to Kansas, the district court did not clearly err in its conclusion that Hawley failed to "clearly demonstrate[] acceptance of responsibility" entitling him to a reduction in his sentence under § 3E1.1.  See U.S.S.G. § 3E1.1(a).[3]

---

[3]  Hawley also claims that he qualifies for the additional one-point downward adjustment under subsection (b), which authorizes such an adjustment in the following situation:

> (b)    If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:
>
> (1)    timely providing complete information to the government concerning his own involvement in the offense; or
>
> (2)    timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently.

Because Hawley's entitlement to an adjustment under subsection (b) turns on whether he first meets the requirements of subsection (a), which he has not done, we reject this argument as well.

MOTION TO ENFORCE THE PLEA AGREEMENT

Hawley asserts that he was entitled to a motion pursuant to U.S.S.G. § 5K1.1 (substantial assistance),[4] and also that the government was required to file such motion pursuant to the plea agreement. He alleges that the government acted in bad faith in not filing the motion. Whether government conduct has violated a plea agreement is a question of law which we review de novo. United States v. Robertson, 45 F.3d 1423, 1442 (10th Cir.), cert. denied, 116 S. Ct. 133 (1995). "[P]lea bargains are governed by contract principles, and if any ambiguities are present, they will be resolved against the drafter." United States v. Massey, 997 F.2d 823, 824 (10th Cir. 1993) (citation omitted) (alteration in original).

In exchange for Hawley's plea of guilty to Count I of the indictment, the government made certain concessions. The concession at issue here is found at paragraph 7(D) of the Plea Agreement. In paragraph 7(D) the government agreed:

> If appropriate, prior to sentencing, to file a motion pursuant to U.S.S.G. § 5K1.1, to reduce [Hawley's] sentence to reflect his substantial assistance, if any, in the investigation and/or prosecution of another person(s) involved in this offense or other offenses . . . .

---

[4] U.S.S.G. § 5K1.1 provides in part: "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."

-18-

Paragraph 8, however, states that "[t]he defendant acknowledges and understands that the decision, whether to file this motion, and whether he has provided substantial assistance, is a matter that resides in the sole and exclusive discretion of the United States Attorney for the District of Kansas."

Hawley contends that he did "substantially assist" the government by: (1) providing information concerning the activities which formed the basis of the Indictment, both in California and Arkansas; (2) providing information to the court regarding conduct in Arkansas which interfered with his ability to cooperate; and (3) expressing his willingness to provide information about his brother's drug activities. Hawley further contends that the government took no steps to have a polygraph examination administered to him concerning the information he provided and that the government conducted a "less than enthusiastic investigation" into his claims regarding interference with his ability to cooperate before concluding them to be meritless. The government responds that Hawley did not substantially assist its investigations, and that after Hawley was returned to custody, he "further obstructed justice by making false allegations of law enforcement corruption in Arkansas," which, upon investigation, turned out to be fictitious.[5]

---

[5] At the sentencing hearing the government also informed the court that "there is evidence that indicates that during the period of time that [Hawley] was at-large between the time that he failed to appear and subsequently was arrested,

(continued...)

The district court concluded that "the government has demonstrated it has abided by the terms of the plea agreement and the government has reasonably and apparently in good faith concluded that the information provided by the defendant is not sufficient to warrant the filing of a motion pursuant to § 5K1.1, and the defendant's failure to -- failure and inability to provide information that would substantially assist the government in its investigation of criminal activities clearly justify the government decision not to file a motion for a reduction of sentence for substantial assistance, and therefore, a motion to enforce the plea agreement is again denied."

As with other decisions made by prosecutors, "federal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive." Wade v. United States, 112 S. Ct. 1840, 1843-44 (1992) (stating as an example of an unconstitutional motive a situation where a prosecutor refuses to file a substantial-assistance motion because of the defendant's race or religion). "It follows that a claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to

---

[5](...continued)
knowing that the codefendant was providing information, the defendant provided information to others, particularly his brother, indicating the codefendant was providing information, and in that manner obstructed the assistance of the codefendant."

discovery or an evidentiary hearing. Nor would additional but generalized allegations of improper motive." Id. at 1844. "[A]bsent an unconstitutional motive for refusing to do so, the prosecution enjoys complete discretion in determining whether to file a substantial assistance motion, and . . . a claim seeking to compel a motion based on a defendant's view of what he or she deems to have been 'substantial assistance' will not be entertained." Massey, 997 F.2d at 824 (citing Wade, 112 S. Ct. at 1844).

We have stated that "Congress wisely or unwisely left the matter of substantial assistance to the prosecutor, unless there's a formal agreement which would bind the prosecutor." Massey, 997 F.2d at 824 (internal quotation marks omitted). Under Hawley's Plea Agreement the decision whether to file a motion for substantial assistance resides within the "sole and exclusive discretion" of the prosecutor. Hawley does not allege that the government in this case had an unconstitutional motive for its refusal to file a motion for substantial assistance on his behalf. Thus, we lack jurisdiction to consider this claim further. See United States v. Gerber, 24 F.3d 93, 95 (10th Cir. 1994) (exercising jurisdiction to review "alleged constitutional infirmities arising from the prosecutor's discretionary refusal to file a § 5K1.1 motion").

MOTION TO WITHDRAW GUILTY PLEA

-21-

In exchange for Hawley entering a plea of guilty to Count I of the Indictment, the government also agreed, <u>inter alia,</u> not to oppose that Hawley receive a three level reduction for acceptance of responsibility and not to oppose that Hawley not receive a two level enhancement for obstruction of justice. The presentence report recommended that Hawley should receive a two-level enhancement for obstruction of justice and that, pursuant to Application Note 4 of U.S.S.G. § 3E1.1, Hawley be denied a downward adjustment for acceptance of responsibility. In the government's written response to the presentence report, the government made the following comments:

> The government responds in acknowledging its obligation under the plea agreement not to advocate such an enhancement but agrees with the facts related to the presentence report.

> The government acknowledges its obligation under the plea agreement to not oppose a three-level reduction for acceptance of responsibility. Further, the government agrees with the facts related in the presentence report and states there is no evidence that this is "an extraordinary case" allowing for both an enhancement pursuant to U.S.S.G. § 3C1.1 and a reduction pursuant to U.S.S.G. § 3E1.1.

At the sentencing hearing the government made the following additional comments to the judge:

> May it please the court, your honor, regarding the defendant's objections, we have filed a formal response to the formal objections. They are considered in the presentence investigation report. They accurately reflect the government's position. Pursuant to plea agreement, our position was that, at the time that the agreement was signed, to not oppose that no enhancement for obstruction occur, and

not oppose that exception -- acceptance of responsibility credit be given; however, we note for the record the facts contained in the presentence investigation report that we were not aware of at the time of the agreement. We also note the facts regarding the defendant's debriefing that -- or lack thereof that were unknown to us at the time that we entered into the plea agreement. We believe that in spite of our absence of opposition to the defendant's not getting the obstruction and getting acceptance that the facts are accurately recited in the PSIR.

As it relates to this, however, being an extraordinary circumstance meriting any extraordinary credit, we believe the record is completely devoid of that and that the record would be in the PSIR, and we believe that the court, upon reflection of the facts contained therein, should come to a similar conclusion. There is just nothing extraordinary about this matter as it relates to the role in the offense, the defendant's role in the offense between him and Mr. Guardado. He would have been above Mr. Guardado, and in fact, it appears that through his relationship with his brother would have had a substantially superior role to others involved in this matter as a purely factual matter, and for that reason, largely for that reason, he was unwilling to give up any information whatsoever in a timely fashion regarding his brother, in a fashion where anything regarding the allegations in this indictment could have been reasonably linked to his brother, so for those reasons, we would ask the court to consider the plea agreement and to consider the facts contained in the PSIR that were considered in responding to the defendant's objections in light of those facts that were unknown to the government at the time that the plea agreement was entered. Thank you.

Immediately following the government's comments during the sentencing hearing,

Hawley made the following motion:

Your Honor, the government, by the comments that it has just made, has completely violated every term of the plea agreement that was entered into herein; therefore we move to withdraw the plea.

-23-

The district court denied the motion.

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971). Furthermore, "[i]n order to comply with the plea agreement, the government cannot rely upon a 'rigidly literal construction of the language' of the agreement, nor may it accomplish 'through indirect means what it promised not to do directly.'" United States v. Hand, 913 F.2d 854, 856 (10th Cir. 1990) (quoting United States v. Shorteeth, 887 F.2d 253, 256 (10th Cir. 1989)). We review de novo whether government conduct has violated a plea agreement. Allen v. Hadden, 57 F.3d 1529, 1534 (10th Cir.), cert. denied, 116 S. Ct. 544 (1995).

Plea agreements are governed by contract principles, Massey, 997 F.2d at 824, and we must construe the Plea Agreement according to what Hawley "reasonably understood" when he entered his plea, Shorteeth, 887 F.2d at 256. After review of the Plea Agreement in this case, and the governments statements to the court during sentencing, we conclude that the Agreement can reasonably be interpreted as proscribing the comments made by the government at the sentencing hearing. Furthermore, we conclude that the comments accomplished by indirect means what the government promised not to do directly. The government argues that it was only fulfilling its obligation to apprise the court of

-24-

"information which protects the sentencing decision from the taint of incomplete and inaccurate information."  The government further contends that provision of such information does not violate a plea agreement where the prosecutor does not attempt to characterize or argue its effect to the sentencing judge.

However, here the government was not responding to "inaccurate information."  See Hand, 913 F.2d at 856 (indicating that the prosecutor has a responsibility to inform the court so that its decision will not be "tainted by incomplete and inaccurate information").  To the contrary, the government merely underscored the facts recited in the PSIR and argued that such facts did not show that Hawley had presented an extraordinary situation that would entitle him to a reduction in his sentence given the finding that he had obstructed justice.  Taken as a whole, the prosecutor's comments here appear to be a thinly disguised, if disguised at all, effort to persuade the court in a way that the government had promised it would not do.  In Hand, the government agreed in a plea agreement to recommend a two-level reduction for the defendant's role as a minor participant in the offense.  913 F.2d at 855.  At the defendant's sentencing hearing, the defendant personally testified concerning his role in the offense and called witness to support his position.  Id.  The government cross-examined these witnesses, and in doing so elicited certain factual clarifications which tended to undermine the defendant's position that he played a minor role in the offense.  Id.

The government ultimately did recommend that the defendant receive a reduction for having a minor role in the offense, stating to the court that "the court's well aware of the facts in this case and can make its own conclusion." Id. at 856. The defendant argued that the government violated the plea agreement by eliciting unfavorable facts on cross examination during the sentencing hearing and by the prosecutor's comments that the court was free to reach its own conclusion based on the facts before it. Id. We rejected defendant's claim, holding that "[a] promise to 'recommend a reduction' is not a promise to stand mute in the face of incorrect or misleading testimony offered before the trial court." Id. We did, however, suggest that if the prosecutor had attempted to "characterize the evidence elicited on cross examination," or to "argue the effect of such evidence to the sentencing judge," the result might have been different. Id. & n.3.

Here, the government's comments do characterize the facts and do argue a conclusion to the sentencing judge. The government's negative comments with regard to whether this case was "extraordinary" could only have the effect of opposing Hawley's receipt of an adjustment for acceptance of responsibility. As discussed earlier, the only way Hawley could have received a reduction for acceptance of responsibility after having received an enhancement for obstruction of justice would have been if he qualified as an "extraordinary" case. U.S.S.G. § 3E1.1, Application Note 4. Furthermore, the government was not correcting

-26-

inaccurate information when it asserted that the record is "devoid" of facts indicating that this is an extraordinary case, and stating that "we believe that the court, upon reflection of the facts contained therein, should come to a similar conclusion." These statements do more than merely state facts or simply validate those facts found in the Presentence Report; they provide a legal "characterization" of those facts and "argue the effect" of those facts to the sentencing judge.

Finally, the fact that the government may not have been aware of certain facts in the Presentence Report at the time it entered into the Agreement with Hawley does not excuse or justify its conduct at the sentencing hearing. When plea agreements are made with "full knowledge of the facts at hand," those agreements must be adhered to by the prosecution in order to maintain the integrity of the plea. United States v. Cooper, 70 F.3d 563, 567 (10th Cir. 1995) (emphasis added).

> If at a later date the government discovers facts that cause it to believe that its prosecutorial discretion was not properly exercised, it has the ethical obligation to withdraw from the plea agreement and advise the defendant so that he or she may prepare for trial or renegotiate. It is certainly not proper for the government to wait until the sentencing hearing then breach the terms of the plea agreement, shielding its behavior by claiming its obligation to be an ethical officer of the court.

Id.  The government breached its plea agreement with Hawley, and Hawley is entitled to relief regardless of whether the government's conduct actually affected the sentencing judge.  Santobello, 404 U.S. at 262-63 (holding that whether or not the prosecutor's conduct actually influenced the judge's decision or not, "the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration").

The Court in Santobello remanded the case back to the state courts to determine the defendant's ultimate relief because the state court was "in a better position to decide whether the circumstances of [the] case require only that there be specific performance of the agreement on the plea, in which case [defendant] should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by [defendant], i.e., the opportunity to withdraw his plea of guilty."  Santobello, 404 U.S. at 263 (footnote omitted).  Providing this type of latitude for the district court on remand is preferable in light of the district court's position with respect to the case.  See Allen, 57 F.3d at 1534 (citing Santobello and stating that "[i]f the court finds that the government breached the plea agreement, the court must remand the case either for specific performance or withdrawal of the defendant's guilty plea").  Compare Cooper, 70 F.3d at 567 (when it is clear from the appellate record that

the government's breach of the plea agreement is intentional or egregious, the appellate court may conclude that resentencing is not an adequate remedy and it may order that defendant be allowed to withdraw his guilty plea).  Here, we believe it is appropriate to remand this matter to the district court for its determination of whether the defendant should be permitted to withdraw his guilty plea or whether he should simply be resentenced by another judge under conditions where the government fulfills the promises it made in the Plea Agreement to not oppose that Hawley receive a three level reduction for acceptance of responsibility and to not oppose that Hawley not receive a two level enhancement for obstruction of justice.

## CONCLUSION

Based on the foregoing discussion, we **AFFIRM** the district court's rulings in this case in all respects, with the exception of it's denial of Hawley's Motion to Withdraw Guilty Plea.  We **REMAND** with instructions that the district court determine whether Hawley's plea should be vacated, allowing him to replead, or whether Hawley should be resentenced by a different judge.