### UNITED STATES of America, Plaintiff/Appellee,

v.

### Stacey Theresa LOVING, Defendant/Appellant.

### No. 94–40021–01–SAC.

United States District Court, D. Kansas.

Nov. 9, 1999.

---

Charles D. Dedmon, Office of Federal Public Defender, Kansas City, KS, Matthew B. Works, Works, Works & Works, P.A., Topeka, KS, for Defendant.

Cpt. Daniel A. Nastoff, Office of the Staff Judge Advocate, Fort Riley, KS, for Plaintiff.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This case is an appeal by the defendant, Stacey T. Loving, of the sentence of eight months of imprisonment imposed by Magistrate Judge Reid for her theft of $147 worth of Nintendo (computer game) cartridges from the PX at Fort Riley. Loving pleaded guilty to shoplifting pursuant to a plea agreement with the government. In exchange for her plea, the government agreed to recommend a sentence that did not include a period of incarceration. Loving cooperated with the presentence writer, fully admitted her guilt, and expressed remorse for her crime, conduct which earned a two point reduction for acceptance of responsibility. Nevertheless, based upon her extensive prior criminal history, the presentence investigation report (PSIR) calculated the defendant's guideline range to be 2 to 8 months (Offense Level 3; Criminal History Category V = guideline range of 2 to 8 months). The magistrate judge sentenced Loving to

a sentence of 8 months, the top of the guideline range. The defendant was ordered to pay restitution and special assessment of $25. The defendant was also sentenced to one year of supervised release. In addition to the standard conditions of supervised release, the defendant was ordered to perform 20 hours of community service and to participate in a mental health program.

Loving only appeals the sentence imposed by Magistrate Judge Reid. Execution of the defendant's sentence was stayed pending this appeal.

This case has languished for several years while the court awaited preparation of the transcript of the sentencing proceedings before the magistrate judge. On July 13, 1999, at 10:00 a.m., the court conducted a telephone conference with counsel to discuss the status of this case. At that time the court first learned that the audio transcript of the sentencing proceedings was inaudible and therefore no transcript of those proceedings is available. During that same telephone conference the court set a briefing schedule for the parties. Since that time, the parties have filed their respective briefs. The government, having scoured its files, concedes that no audible tape of the sentencing proceedings now exists.

### Standard of Review of the Sentence Imposed by the Magistrate Judge

The district court's review of the sentence imposed by the magistrate judge is very limited. Title 18, section 3742 provides in pertinent part:

(a) Appeal by a defendant.—A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines; or

(3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervised release than the maximum established in the guideline range, or includes a more limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the maximum established in the guideline range; or

(4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

(g) Application to a sentence by a magistrate.—An appeal of an otherwise final sentence imposed by a United States magistrate may be taken to a judge of the district court, and this section shall apply (except for the requirement of approval by the Attorney General or the Solicitor General in the case of a Government appeal) as though the appeal were to a court of appeals from a sentence imposed by a district court.

*See United States v. Hicks*, 1994 WL 68724 (D.Kan. Feb.18, 1994) (given limited instances for reversing sentence imposed by Magistrate judge, Judge Saffels affirms 6 month term of imprisonment imposed on defendant by Magistrate judge for open container violation on Fort Riley).

### ISSUES

1. **Was the defendant's criminal history properly calculated?**

■ After reviewing the defendant's criminal history, the presentence investigator found that the defendant had a total of 10 criminal history points, resulting in a criminal history category of V. In reaching that conclusion, the PSIR, *inter alia*, assessed two points for a 1986 theft conviction (Paragraph 22) and two points for a 1989 theft conviction (Paragraph 25). In challenging those assessments, the defendant contends that because she only served 33 days for the 1986 conviction and only 5 days for the 1989 conviction, she should have been assessed one, not two, points for each prior conviction. The government disagrees, arguing that the defen-

dant's criminal history score is properly calculated.

## Calculating Criminal History

The number of criminal history points assigned to a criminal conviction is determined by the sentence imposed and can vary from one to three points depending on the length of sentence. A sentence of imprisonment of less than sixty days earns one criminal history point. *See U.S.S.G.* § 4A1.1(c). A sentence of imprisonment of at least sixty days up to and including one year and one month earns two criminal history points. *See id.* § 4A1.1(b). Finally, any sentence of imprisonment for more than one year and one month earns three criminal history points. *See id.* § 4A1.1(a).

"Sentence of imprisonment" is defined in Guideline section 4A1.2, which provides in pertinent part as follows:

§ 4A1.2 Definition and Instructions for Computing Criminal History

.    .    .    .    .

(b) Sentence of Imprisonment Defined

(1) The term "sentence of imprisonment" means a sentence of incarceration and refers to the maximum sentence imposed.

(2) If part of a sentence of imprisonment was suspended, "sentence of imprisonment" refers only to the portion that was not suspended.

The application notes to Guideline section 4A1.2 further clarify it is the sentence imposed or "pronounced," rather than the sentence actually served, that determines the number of criminal history points assigned to the conviction. *Id.* § 4A1.2 application note 2.

*United States v. Jackson,* 156 F.3d 1245, 1998 WL 517677, *1–2 (10th Cir.1998). *See United States v. Pettit,* 938 F.2d 175, 178 (10th Cir.1991).

## Analysis

As the sentencing guidelines and Tenth Circuit precedent make clear, it is the sentence imposed or pronounced, rather than the sentence actually served, that determines the number of criminal history points assigned to a conviction. Consequently, the PSIR correctly computed Loving's criminal history.

**2. Although her criminal history score was properly calculated, is the defendant nevertheless prejudiced by the absence of a transcript of the sentencing proceedings?**

■ The defendant contends that the absence of a transcript of the sentencing proceedings makes it impossible for this court to conduct a proper review of the sentence imposed in this case and her argument that the government breached the plea agreement in this case. The government responds, arguing that given the narrow legal issues appropriately raised in this appeal, the absence of a transcript in no way precludes the court from reviewing the sentence imposed in this case. The government denies that it breached the plea agreement in this case.

## Analysis

Under the unique circumstances of this case, the court finds that the absence of a transcript of the sentencing proceedings prejudices the defendant's ability to fully and fairly present her appeal in this case. Although the information necessary to evaluate the magistrate judge's calculation the defendant's criminal history is available from reviewing the PSIR and the court file, the absence of a transcript of the sentencing proceeding makes it impossible for the court to fully review the defendant's argument that the government breached its obligations under the plea agreement in this case.

The defendant is no longer represented by the same appointed attorney who represented her in the proceedings before the magistrate judge. Similarly, the government is no longer represented by the same counsel. Although former counsel for each party has been contacted to describe their

independent recollection of Loving's sentencing, the long passage of time has understandably diminished each person's memory of the facts central to the issues raised in this appeal.

The impact of lost or missing transcripts on a defendant's conviction or sentence is dependent upon the facts and circumstances of each case. *See United States v. McIntosh*, 979 F.Supp. 1329, 1331 (D.Kan. 1997). In this case, the court cannot evaluate the defendant's claim that the government's statements and position at the sentencing hearing violated its obligations under the terms of the plea agreement. In exchange for the defendant's plea, the government agreed to not seek a sentence that included a period of incarceration. In her appeal, the defendant suggests that the government's act of filing a memorandum in response to her objections to the PSIR's calculation of her criminal history, and the position it took at the time sentence was imposed, violated that provision of the plea agreement. The government responds, arguing that it did not violate the plea agreement as it did not seek to facilitate a sentence of imprisonment. The government contends that its brief regarding the calculation of the defendant's criminal history "was merely a response to defendant's objection."

The Tenth Circuit recently summarized the appropriate legal standards for evaluating a defendant's claim that the government breached the plea agreement:

■ sentencing.

"Whether government conduct has violated a plea agreement is a question of law which we review de novo." *United States v. Hawley*, 93 F.3d 682, 690 (10th Cir.1996).

Where the government obtains a guilty plea predicated in any significant degree on a promise or agreement of the prosecuting attorney, such promise must be fulfilled to maintain the integrity of the plea. *See Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *United States v. Hand*, 913 F.2d 854, 856 (10th Cir.1990);

*see also United States v. Peglera*, 33 F.3d 412, 414 (4th Cir.1994) ("Because a government that lives up to its commitments is the essence of liberty under law, the harm generated by allowing the government to forego its plea bargain obligations is one which cannot be tolerated."). To determine whether a breach has, in fact, occurred, we apply a two-step process: (1) we examine the nature of the government's promise; and (2) we evaluate this promise in light of the defendant's reasonable understanding of the promise at the time the guilty plea was entered. *United States v. Rockwell Int'l Corp.*, 124 F.3d 1194, 1199 (10th Cir.1997), *cert. denied*, 523 U.S. 1093, 118 S.Ct. 1559, 140 L.Ed.2d 791 (1998).

We apply general principles of contract law to define the nature of the government's obligations in a plea agreement. *Hawley*, 93 F.3d at 692; *see Doe v. United States*, 51 F.3d 693, 701 (7th Cir.1995) ("Plea agreements are contracts, which means that the first place to look in determining the extent of the government's promises under the [ ] agreement is the language of the agreement itself."). Accordingly, we determine the government's obligations by reviewing the express language used in the agreement. *See United States v. Courtois*, 131 F.3d 937, 939 (10th Cir. 1997) ("We agree with the other circuits that have considered this issue and have found that whether a plea agreement unequivocally obligates the government to provide defendant with the opportunity to provide substantial assistance turns on the specific language of the agreement."); *Rockwell*, 124 F.3d at 1200; *United States v. Vargas*, 925 F.2d 1260, 1266–67 (10th Cir.1991); *United States v. Easterling*, 921 F.2d 1073, 1079 (10th Cir.1990). We will not allow the government to rely "upon a 'rigidly literal construction of the language' of the agreement" to escape its obligations under the agreement. *Hand*, 913 F.2d at 856 (*quoting United States v. Shorteeth*, 887 F.2d 253, 256 (10th Cir.1989)). As

with the interpretation of any contract, we also apply the maxim that the agreement should be construed against its drafter. *Hawley*, 93 F.3d at 690. *United States v. Brye*, 146 F.3d 1207, 1209–10 (10th Cir.1998). "The government cannot prevail upon a formalistic, literal interpretation of the language in the plea agreement, and it may not do indirectly what it promised not to do directly." *United States v. Belt*, 89 F.3d 710, 713 (10th Cir.1996) (citing *Hand*, 913 F.2d at 856).

■■■■ " '[T]he party who asserts a breach of a plea agreement has the burden of proving the underlying facts that estab-lish a breach by a preponderance of the evidence.' " *United States v. Hurst*, 166 F.3d 1222, 1999 WL 12977 (10th Cir.1999) (Table) (*quoting Allen v. Hadden*, 57 F.3d 1529, 1534 (10th Cir.1995)). "If the court finds that the government breached the plea agreement, the court must remand the case either for specific performance or withdrawal of the defendant's guilty plea." *Allen*, 57 F.3d at 1534 (*citing Santobello*, 404 U.S. at 262–63, 92 S.Ct. 495 and *United States v. Canada*, 960 F.2d 263, 271 (1st Cir.1992)). "However, '[t]he choice of remedy rests with the court and not the defendant.' " *Id.* (*quoting Canada*, 960 F.2d at 271). "[E]ven if the district court indicates the government's conduct or comments allegedly breaching the agreement had no influence on the ultimate sentence, we must still grant the defendant a remedy if a breach occurred."

The court has reviewed the government's response to the defendant's objections to the PSIR. Nothing on its face expressly advocates a sentence of imprisonment. Instead, the government cites cases demonstrating that the PSIR properly calculates the defendant's criminal history. This the government was permitted to do. *See United States v. Brye*, 146 F.3d 1207, 1211 (10th Cir.1998) ("Certainly the government is entitled, perhaps even obligated as an officer of the court, to correct factual and legal inaccuracies for the court.").

But this finding does not end the court's inquiry. At the time sentence was imposed, the government was obligated by the terms of the plea agreement to not expressly or impliedly recommend a sentence of incarceration. The following discussion from the Tenth Circuit's decision in *Brye* describes the government's obligation to scrupulously honor the terms of the plea agreement:

At the sentencing hearing when defendant argued he should receive a downward departure based on the government's pre-indictment delay, the government argued federal prosecution was delayed because Garner had become a confidential informant and defendant's prosecution would require disclosure of Garner's status. See Record VI at 50–52 (arguing government did not delay prosecution for tactical reasons); Record VI at 58–59 (arguing defendant not prejudiced by government's delay); VII at 10 (announcing plan to present testimony to oppose motion). The government also called an F.B.I. agent to testify about Garner's role in the investigation to support its position. By arguing the government did not delay prosecution for tactical reasons and presenting testimony to support its position, the government clearly breached its plea agreement with defendant to "defer to the court's determination" on a downward departure for pre-indictment delay. *See Hawley*, 93 F.3d at 693 (government's comments that "characterize the facts" and "argue a conclusion" breach plea agreement to not take position on issue); *c.f. Hand*, 913 F.2d at 856 ("The prosecutor here did not characterize the evidence elicited on cross examination, nor did he argue the effect of such evidence to the sentencing judge.").

The government also breached the plea agreement with respect to defendant's motion to depart for coercion and duress. The following statements, made in the government's sentencing statement, clearly demonstrate the government crossed the proverbial "line":

Section 5K2.12 speaks of "serious" duress. The guideline drafters further provided that the extent of departure, if any, should be based upon the reasonableness of the defendant's conduct and whether it would have [been] less harmful.

One of the best methods for the court to determine this issue is to review the defendant's own words, captured in a wiretap, as he spoke those words just prior to, and after, the car chase. They reflect defendant's decisions in dealing with what had, undisputably, been a long-standing "family" matter, potentially involving inter-family violence. The real issue seems to be whether the "duress" was so extreme that defendant acted reasonably by breaking the law to protect himself and others, or whether this was a case of mutual combatants.

Record I, Doc. 26, at 4–5. While this statement does not explicitly state defendant should not receive a downward departure based on coercion and duress, its implication is clear. *See Hawley,* 93 F.3d at 693 (prosecutor's purported factual information provided to court was "a thinly disguised, if disguised at all, effort to persuade the court in a way that the government had promised it would not do"). By pointing out the "real issue" and highlighting the "defendant's own words" as "one of the best methods for the court to determine this issue," the government was obviously, albeit subtly, taking a position on whether defendant should receive a downward departure for coercion and duress. Perhaps the best indication of the fact that the government's statements were meant to persuade is that the court ultimately resolved defendant's motion by

reviewing defendant's "own words" in the tape-recorded conversations and concluding the brothers had a "mutual disagreement." See Record VII at 59–65. "Courts routinely hold that prosecutors breach plea agreements when they engage in condemnatory speech or contradictory acts at sentencing." *United States v. Smith, Jr.,* 140 F.3d 1325, 1327 (10th Cir.1998).

146 F.3d at 1212–13.

In this case, although the government's brief takes the legally correct position regarding the calculation of the defendant's criminal history, the brief contains a few deprecatory comments about the defendant's extensive criminal history. In light of the terms of the plea agreement in this case, it clearly would have been more prudent for the government to have simply responded to the legal points raised by the defendant, bereft of any sardonic commentary. Whether the government's commentary in its sentencing brief on the defendant's lengthy criminal history influenced the magistrate judge, and whether the government reiterated, retracted or embellished those same points at the time sentence was imposed, are now unknown. The defendant's criminal history is an important component of determining the defendant's sentencing guideline range (as well as the defendant's sentence within that range[1]) as it comprises the horizontal axis of the sentencing table. And while no transcript is available, the lengthy sentence imposed by the magistrate judge ostensibly reflects his dim view of the defendant's criminal history. In any event, apparently having considered the government's sentencing brief, and whatever comments, if any, the government made at the time of sentencing, the magistrate judge imposed the maximum sentence possible against this defendant.[2]

---

**1.** *See United States v. Robertson,* 45 F.3d 1423, 1448 (10th Cir.1995) (defendant's "prior criminal convictions constitute the sort of background, character and conduct of a defendant relevant in determining where, within the applicable range, a defendant should be sentenced.") (citations omitted).

**2.** Because the transcript of the sentencing proceeding is missing, there is no record indicating whether the magistrate judge explained his reasons for imposing a sentence at the top of the properly calculated guideline range. Because the sentencing range in this case did not exceed 24 months, this court simply notes

Given the unique combination of factors in this case—the substantial passage of time, the government's unfavorable commentary on the defendant's criminal history in its sentencing brief, the lack of a sentencing transcript and the failed memories of all involved—the court believes that the interests of justice are best served by setting aside the defendant's sentence and remanding this case to another magistrate judge for resentencing. *See Brye*, 146 F.3d at 1213.[3] So that it is clear, the government's unfavorable commentary in its sentencing brief on the defendant's lengthy criminal history should play no further part in this case. The court is confident that on remand the government will expressly and unequivocally abide by its agreement to recommend a sentence which does not include a term of imprisonment and that a transcript of the sentencing proceedings will be preserved.

IT IS THEREFORE ORDERED that the sentence imposed against Loving is vacated. This case is remanded to U.S. Magistrate Judge Catherine A. Walter for imposition of sentence consistent with this opinion.

that the magistrate judge was not required to "specifically state [his] reason for imposing a sentence at a particular point within the sentencing range ..." *United States v. Smith*, 81 F.3d 915, 919 (10th Cir.1996) (*citing* 18 U.S.C. § 3553(c)).

3. In *Brye*, the Tenth Circuit stated:
 When the government has breached a plea agreement, it is generally preferable to remand the case to the district court for its determination as to whether defendant should be resentenced by a different judge or should be allowed to withdraw his guilty plea. *Hawley*, 93 F.3d at 694 ("Providing

this type of latitude for the district court on remand is preferable in light of the district court's position with respect to the case."). When the government's breach is particularly egregious or intentional, we will allow defendant to withdraw the guilty plea. *See id.; see, e.g., United States v. Cooper*, 70 F.3d 563, 567 (10th Cir.1995). Since it does not appear the government's breach was egregious or intentional, but rather, was based on misinterpretation of the plea agreement, we remand only for resentencing by a different judge.
146 F.3d at 1213.