# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1081
_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the Western |
| v. | * | District of Missouri. |
| | * | |
| Stacey L. Gomez, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 12, 2001

Filed:  November 23, 2001

_____

Before McMILLIAN, FAGG, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

FAGG, Circuit Judge.

Stacey L. Gomez pleaded guilty to conspiracy to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846 (1994). The plea agreement stated the drug quantity was 1092.07 grams, resulting in a base offense level of 32, and Gomez was entitled to a three-level reduction for acceptance of responsibility.  Gomez objected to a greater drug quantity calculation and a higher base offense level of 34 presented in the presentence investigation report (PSR).  The PSR calculation included more methamphetamine, and cocaine, marijuana and heroin, that were not included in the plea agreement calculation.  Before the sentencing hearing, the probation office filed a PSR addendum, describing letters intercepted by

U.S. Marshals in which Gomez requested that his wife warn persons of the Government's investigation, advised her how to traffic in drugs without getting caught, and threatened a coconspirator. Because of these letters, the Government withdrew its recommendation for the acceptance of responsibility reduction and argued for a two-level enhancement for obstruction of justice. After the sentencing hearing, the district court[*] determined the PSR properly calculated the drug quantity and base offense level, denied the acceptance of responsibility reduction, and applied the obstruction of justice enhancement. The district court also found Gomez was a career offender and applied the career offender enhancement, resulting in a total offense level of 37 and a criminal history category of VI. The resulting guidelines range was 360 months to life imprisonment. The district court sentenced Gomez to 360 months imprisonment; Gomez now appeals, seeking to withdraw his guilty plea. We review the application of the guidelines and interpretation of the plea agreement de novo and factual findings for clear error. See United States v. Rohwedder, 243 F.3d 423, 425 (8th Cir. 2001) (reviewing application of the Guidelines de novo and factual findings for clear error); United States v. Has No Horses, 261 F.3d 744, 750 (8th Cir. 2001) (reviewing interpretation of plea agreements de novo). We interpret the plea agreement according to general contract principles. United States v. Van Thournout, 100 F.3d 590, 594 (8th Cir. 1996).

Because Gomez's sentence is controlled by his status as a career offender, we summarily reject Gomez's claims about drug quantity and base offense level. See e.g., United States v. Mansell, No. 01-1130, 2001 WL 914188 (8th Cir. Aug. 15, 2001) (unpublished). The district court correctly found Gomez is a career offender, a fact that Gomez does not challenge on appeal. The indictment and the plea agreement state Gomez is responsible for more than fifty grams of methamphetamine which, under 21 U.S.C. § 841(b)(1)(A)(viii) (Supp. 1999), mandates a sentencing

---

[*]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

range of ten years to life imprisonment. Under the guidelines career offender enhancement, if the statutory maximum penalty is life imprisonment, then the offense level is 37. U.S. Sentencing Guidelines Manual § 4B1.1 (2000). Because the offense level enhanced by the career offender provision is greater than the base offense level, the career offender offense level controls. Id. Thus, it makes no difference whether the drug quantity was the amount stipulated to in the plea agreement or the amount explained in the PSR.

We reject Gomez's argument that the obstruction of justice enhancement was unsupported by evidence beyond the PSR addendum. Gomez did not object to the facts alleged in the addendum so he cannot contest these facts on appeal. See McCumber v. United States, 30 F.3d 78, 80 (8th Cir. 1994); United States v. Deninno, 29 F.3d 572, 580 (10th Cir. 1994). Additionally, Gomez admitted he wrote the letters intending to warn other conspiracy members of the investigation. The admission is sufficient to support the enhancement. See, e.g., United States v. Pompey, 121 F.3d 381, 382 (8th Cir. 1997).

We agree with Gomez's contention that the Government breached the plea agreement by presenting evidence of greater drug quantity. See United States v. Johnson, 132 F.3d 628, 630-31 (11th Cir. 1998). Under our earlier analysis, however, it is clear that the career offender enhancement determines Gomez's sentence. Thus, the disputed drug quantity has no impact on Gomez's sentence.

We also agree with Gomez's contention that the Government breached its agreement by not recommending the acceptance of responsibility reduction. See United States v. Mitchell, 136 F.3d 1192, 1193-94 (8th Cir. 1998), cert. denied, 122 S. Ct. 129 (2001); United States v. Hawley, 93 F.3d 682, 693 (10th Cir. 1996); United States v. Valencia, 985 F.2d 758, 761 (5th Cir. 1993). The record is clear that the plea agreement requires the Government to recommend the reduction and that the Government did not do so. The Government argues that Gomez breached the plea

agreement first by writing the drug-related letters to his wife.  See United States v. Britt, 917 F.2d 353, 359-60 (8th Cir. 1990) (setting aside guilty plea because Government is not bound by plea agreement if defendant breaches it first).  Gomez replies that he wrote the letters before signing the agreement on June 5, 2000 and cannot break a promise he has not yet made.  According to the Government's proffer, the first letter was written on February 28, 2000, the next on March 9, 2000, and several more followed.  Gomez claims he did not write any additional letters after he entered into the plea agreement, but the record contains no evidence to confirm or refute that assertion.  If Gomez's contention that he wrote the objectionable letters only before entering the agreement is correct, he did not break his promise, and the Government is not excused from its obligations.

Even if Gomez did break his promise first, the Government's choice of remedy is inappropriate.  The prosecutor should move to withdraw from the agreement rather than breach the agreement at sentencing.  See Hawley, 93 F.3d at 693.  If the Government learned of Gomez's letter-writing after it entered into the plea agreement, it must choose between withdrawing from the agreement or keeping its promise.  Id.  In fact, paragraph 7g of the agreement provides that if Gomez does not fulfill his part of the bargain, the Government can void the agreement and refile dismissed charges.  Having decided to go ahead with the sentencing, the Government was obligated to keep its promise and recommend the acceptance of responsibility reduction.

The district court is in a better position to determine whether the circumstances require that there be specific performance of the plea agreement or that Gomez's request to withdraw his guilty plea should be granted.  See Hawley, 93 F.3d at 696 (citing Santobello v. New York, 404 U.S. 257, 262-63 (1971)).  Accordingly, we vacate Gomez's sentence and remand for further proceedings to determine whether Gomez should be permitted to withdraw his guilty plea, or whether he should be

resentenced by another judge under conditions where the government fulfills its promise to recommend a three-level reduction for acceptance of responsibility.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.