## THE CALEDONIER.

District Court, S. D. New York.
March 24, 1932.

See, also (C. C. A.) 42 F.(2d) 856.

Theodore L. Bailey, of New York City, for libelants.

Loomis & Reubush, of New York City (Homer L. Loomis, of New York City, of counsel), for claimant.

PATTERSON, District Judge.

The commissioner has reported the sum of $9,736.55 as the damages sustained by the libelants Picard et al., and the sum of $7,298.46 as the damages sustained by the libelants Jonas & Naumburg, Inc. The respondent has filed exceptions.

1. The first exception is that, although the commissioner limited recovery to $100 a bale, he permitted testimony to be introduced to show that the actual market value of the bales, in sound condition, was higher than $100. The interlocutory decrees under which the commissioner was acting provided that the libelants recover their damages not to exceed $100 a bale. The commissioner's duty was first to find the actual damages in the case of each bale, and next to cut the amount down to $100 as to any bale damaged more than that figure. The measure of damages being the difference between the market value of the goods sound and the value of the goods damaged, there was no way of ascertaining the actual damages except by taking proof as to the values sound and damaged of each bale, even though such values were more than

$100. The respondent has no just grievance, for it received the protection it was entitled to under the limitation clause. No damages in excess of $100 per bale were allowed.

The respondent's argument, that no proof of a value over $100 a bale should be admitted for any purpose, would mean that the libelants could recover no damages.

This contention is merely another form of the argument unsuccessfully advanced by the respondent in the Circuit Court of Appeals as to the meaning of the limitation clause. The Caledonier, 42 F.(2d) 856. This exception is overruled.

2. The second exception is that the commissioner based his findings on a rough estimate made at an ex parte survey of which the respondent received no notice. In my opinion the evidence before the commissioner was adequate to support his finding as to the amount of damage done to the cargoes. The examination made by Baker was sufficiently thorough. He was skilled in the work, and it would be unreasonable to expect him to examine every skin. As for the objection that the respondent received no notice of a survey, there was no survey in the sense that a vessel is surveyed. All that the libelants did was to have an expert make an examination of the goods and give estimates. They gave the respondent an opportunity to make an inspection. This exception is wholly without merit.

3. The third exception is that in the Picard shipment there was no evidence as to the damage to each bale, but merely evidence to the effect that the damage to the entire shipment was 22½ per cent.; that nevertheless the commissioner found the damages at 22½ per cent. of the value of each bale. The damage to each of the Jonas & Naumburg bales was satisfactorily shown, and was accordingly found by the commissioner, who lopped off all amounts over $100. In contrast to this, the damage to each of the 104 (or 103) Picard bales was not shown. The testimony is that all were damaged to some extent, and that the damages were 22½ per cent. on the entire shipment. Some were damaged almost 100 per cent.; others as low as 5 per cent.; the average was 22½ per cent. The commissioner accordingly found that there was damage of 22½ per cent. on the entire shipment, but properly refused to find that each bale was damaged 22½ per cent. He did, however, hold that Picard was entitled to damages on the basis of 22½ per cent. of the value, and he found the damages as to each bale by taking 22½ per cent. of its

sound market value, of course cutting the figure down to $100 in all proper cases.

In cases where no limitation as to damages is fixed by contract, this method of averaging is proper enough. The question is the damage to the entire shipment, and what a party may lose on one article is made up to him on another. And it would not be objectionable even here if the proof showed that the damages to the 103 bales ran fairly uniform; that is, that the goods in each bale were damaged in more or less the same degree. But there is no such proof. The evidence is that the percentages of damage in the various bales covered a wide range. The respondent's duty is to pay the actual damage to each bale, but not in excess of $100 as to any bale. The effect of averaging in such a case is to increase the amount which it should pay and to impair the benefit of its $100 limit on each bale. On the slightly damaged bales the shipper will recover more than his actual loss. The limitation agreed upon was not $10,400 on the entire 104 bales, as Picard argues; it was $100 on each bale. To establish the damages in such a case, it is incumbent on the shipper to establish the actual loss on each bale with a fair degree of accuracy, the excess figures to be cut down to $100 for each bale. Suppose that A ships ten horses under an agreement that the damages on injury of any horse shall not exceed $100, and on proof of injury to all the horses in transit he shows that the entire lot of ten were damaged $1,000, without indicating in any way the damage to the horses one by one. I take it that this would be a failure of proof as to damages; that A could not maintain that the $1,000 damages should be averaged over the ten horses at the figure of $100 each. For all that appears, one horse was damaged to the extent of only $20, and as to that animal the recovery should be $20 only. By the "averaging" method, however, the shipper would recover $100 for the injury to that horse.

There was error in allowing the Picard damages at 22½ per cent. of the value of each bale, and the third exception is sustained. The Picard Case will therefore be remitted to the commissioner to enable the libelants to make proper proof of their damages if they are in a position to do so.

4. The fourth exception is that the commissioner erred in finding the market value of the skins in good condition at a figure which was much higher than cost to the libelants. The fact is, however, that the commissioner had ample evidence before him as

a basis for the values found by him. The skins had been purchased in the fall of 1919; the market value which was an issue in the cases was that of March, 1920. It was testified to, and it is indeed well known, that the market had risen rapidly in the interim. There is no merit in this exception.

5. The fifth exception is that the commissioner abused his discretion in allowing interest to the libelants. The allowance of interest in admiralty cases is discretionary. The Scotland, 118 U. S. 507, 6 S. Ct. 1174, 30 L. Ed. 153; The Salutation (C. C. A.) 37 F.(2d) 337. I have reached the same conclusion as to the commissioner. The libelants are not responsible for the delays that have occurred in the disposition of these two cases, with the possible exception of a period of about a year on their motion to submit further proof after the trial on the merits. The delays caused by the respondent covered far longer periods. The award of interest was proper, and this exception is overruled.

All exceptions are overruled except the third. The Picard Case will be remitted to the commissioner for the taking of further proof as to damages.