**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 3 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

  Plaintiff-Appellant,

v.

ARLENE ELIZABETH ROHDE,

  Defendant-Appellee.

No. 98-4000

---

Appeal from the United States District Court
for the District of Utah
(D.C. No. 97-CR-200G)

---

Brooke C. Wells, Assistant United States Attorney, Salt Lake City, Utah (David J. Schwendiman, United States Attorney, Salt Lake City, Utah, on the brief), for Plaintiff-Appellant.

James D. Gilson, VanCott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah (Stephen K. Christiansen, VanCott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, on the brief), for Defendant-Appellee.

---

Before **BRORBY, McKAY,** and **MURPHY,** Circuit Judges.

---

**MURPHY**, Circuit Judge.

The United States appeals the dismissal on double jeopardy grounds of a perjury indictment against Arlyne Rohde.[1]  After pleading guilty to bank robbery and a related firearm offense, but before being sentenced, Rohde testified falsely at her accomplice's trial.  Because she thereby obstructed justice, the sentencing court enhanced her sentence for the bank robbery and firearm offenses.  In light of the sentencing enhancement, the district court held that the Double Jeopardy Clause prevented the government from prosecuting Rohde for perjury based on the same testimony.

For double jeopardy purposes, the consideration of related but uncharged criminal conduct in calculating a sentence, or the enhancement of a sentence for obstructing justice by failing to appear at a hearing, do not constitute "punishment."  *See Witte v. United States*, 515 U.S. 389, 399 (1995); *United States v. Hawley*, 93 F.3d 682, 688 (10th Cir. 1996).  Rohde notes differences between those sentencing calculations and a sentence enhancement for obstructing justice by perjury.  Those differences, however, do not distinguish *Witte* and *Hawley*.  This court thus exercises jurisdiction under 18 U.S.C. § 3731[2] and holds

---

[1]Ms. Rohde notes that, although her name was spelled "Arlene" in both the district court and in the captioning of this appeal, her name is actually "Arlyne."

[2]This statute gives the courts of appeals jurisdiction to hear appeals by the United States in criminal cases "except . . . where the double jeopardy clause of the United States Constitution prohibits further prosecution."  18 U.S.C. § 3731.  This court, however, has interpreted this double jeopardy proviso as requiring a merits analysis: when the United States appeals a double jeopardy decision, this

that a sentence enhancement for perjury, even if the perjury was committed after conviction for the underlying offense, does not bar a subsequent prosecution for the same perjury.

I.    BACKGROUND

Arlyne Rohde pleaded guilty to bank robbery in violation of 18 U.S.C. § 2113(a) and to carrying a firearm during the commission of a violent felony in violation of 18 U.S.C. § 924(c).  *See United States v. Rohde*, 989 F. Supp. 1151, 1152 (D. Utah 1997).  Along with her plea, Rohde filed a statement admitting that she had planned the bank robbery with Paul Jones and Tracy Brown and that Jones and Brown had given her a gun which she carried  during the robbery.  She also admitted these facts under oath at her plea hearing.

The district court, per Judge Dee Benson, accepted Rohde's plea but postponed sentencing until after Jones's trial, at which she was to testify pursuant to a government subpoena.  The court stated that her truthfulness at the Jones trial would likely affect her sentence.

court evaluates the merits of the decision before ascertaining its jurisdiction.  *See United States v. Martinez*, 667 F.2d 886, 889 (10th Cir. 1981).  If this court concludes that the Double Jeopardy Clause does not bar further prosecution, it assumes jurisdiction and reverses the dismissal; only if it concludes that the Clause does bar further prosecution does it let the dismissal stand, albeit technically by dismissing for lack of jurisdiction rather than affirming.

In her trial testimony, Rohde initially reiterated her plea account of the bank robbery. During her second day of testimony, however, she recanted and testified instead that Jones had not participated in or known of the robbery. The government responded in two ways. It indicted her for perjury in violation of 18 U.S.C. § 1621 and, at sentencing on the robbery and firearms charges, it requested an increase of two in her offense level under Sentencing Guideline § 3C1.1 for obstruction of justice.

At her sentencing hearing, Rohde admitted having changed her testimony in an effort to help Jones. The court increased her offense level by two "for obstruction of justice for lying on that witness stand." Relying on the resulting sentence enhancement, Rohde moved to dismiss the perjury indictment on double jeopardy grounds. The court, per Judge J. Thomas Greene, granted the motion and dismissed the indictment. *See id.* at 1156–59.

II.    DISCUSSION

This court reviews *de novo* a district court's decision to dismiss an indictment on double jeopardy grounds. *See United States v. McAleer*, 138 F.3d 852, 855 (10th Cir. 1998) (reviewing *de novo* a denial of a motion to dismiss on double jeopardy grounds). Neither party challenges the court's factual findings.

The Double Jeopardy Clause of the Fifth Amendment provides that no person "shall . . . be subject for the same offense to be twice put in jeopardy of

-4-

life or limb." U.S. Const. amend V. The Supreme Court has long construed the Clause to bar two distinct types of government conduct: punishing a person twice for the same offense or prosecuting a person twice for the same offense. *See, e.g.*, *United States v. Dixon*, 509 U.S. 688, 704 (1993) (citing *North Carolina v. Pearce*, 395 U.S. 711 (1969)); *Ex Parte Lange*, 85 U.S. (18 Wall.) 163, 173 (1874). The district court held, and Rohde argues on appeal, that the enhancement constituted both punishment and a prosecution for perjury. *See Rohde*, 989 F. Supp. at 1157.

A. *The sentence enhancement did not "punish" Rohde for her perjury.*

When a court bases a sentence under the Guidelines in part on relevant conduct, i.e., related but uncharged criminal conduct, it does not thereby punish the defendant for that conduct. *See Witte v. United States*, 515 U.S. 389, 399 (1995). In *Witte*, the defendant pleaded guilty to a charge arising from a 1991 drug sale. The district court based its sentence not only on the amount of drugs involved in the 1991 sale but also on amounts of drugs Witte had conspired to distribute in 1990. *See id.* at 392–94. The court relied on Guideline § 1B1.3, which directs courts to determine the sentencing range for an offense by considering all relevant conduct, not just the conduct constituting the offense of conviction. *See* U.S. Sentencing Guidelines Manual § 1B1.3 (1997) ["U.S.S.G."]. The Supreme Court held that, despite the incorporation of the 1990 conduct in

Witte's sentence, the government did not violate the Double Jeopardy Clause when it later prosecuted Witte separately for that conduct. *See Witte*, 515 U.S. at 397, 403–04. The Court reasoned that a defendant in Witte's situation "is punished, for double jeopardy purposes, only for the offense of which the defendant is convicted." *Id.* at 397.

Rohde attempts to distinguish *Witte* by noting that § 1B1.3 applies only to conduct "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1).[3] Rohde notes that the district court did not take her perjury into account under § 1B1.3 but used it to enhance her sentence under § 3C1.1, which directs the court to increase an offense level by two "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." *Id.* § 3C1.1.[4] Rohde further notes that her perjury occurred years after the conduct comprising her offenses of conviction, not in the same time period, as is generally true of

---

[3]For property, tax, fraud, and drug offenses, like Witte's, on which the Guidelines are largely quantity-dependent, such conduct includes acts or omissions of the defendant "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2); *see also id.*, cmts. 3, 9(B) & bckgrnd.

[4]The commentary to section 3C1.1 specifies that it applies to perjury. *See* U.S.S.G. § 3C1.1 commentary, app. note 3(b).

conduct taken into account under § 1B1.3. *See id.* § 1B1.3(a)(1), (a)(2) & cmt. 9(B).

Tenth Circuit precedent, however, forecloses Rohde's attempt to distinguish *Witte*. *See United States v. Hawley*, 93 F.3d 682 (10th Cir. 1996). While released on bond, Hawley failed to appear for his arraignment. The court forfeited his bond. *See id.* at 685. After Hawley was recaptured, he eventually pleaded guilty. *See id.* The court enhanced his offense level under § 3C1.1 for obstruction of justice because of his failure to appear. *See id.* at 686. He appealed, arguing that the bond forfeiture and sentence enhancement constituted multiple punishments for the same conduct and thus violated the Double Jeopardy Clause. *See id.*

This court disagreed for two reasons. *See id.* at 687–88. First, the bond forfeiture was a remedial civil penalty and not punishment in the sense of double jeopardy jurisprudence. *See id.* Second, under *Witte*, "the enhancement for obstruction of justice was not punishment for any conduct other than the conduct to which Hawley pleaded guilty." *Id.* at 688.

Rohde argues that *Hawley* does not control this case because, in light of its holding that the bond forfeiture was not punishment, its comments about the enhancement were *dicta*. Concededly, the holding that the bond forfeiture was not punishment for purposes of double jeopardy could have alone resolved

Hawley's appeal. The *Hawley* opinion, however, discusses *Witte* so thoroughly and applies it so unequivocally that it leads this panel to treat the § 3C1.1 rationale as an alternate holding, not *dicta*. The *Hawley* panel summarized and quoted *Witte* at length and then applied it in no uncertain terms: "We conclude that the facts of this case are governed by *Witte*. The enhancement of Hawley's sentence under U.S.S.G. § 3C1.1 was punishment for the underlying offense to which he pleaded guilty, not punishment for failing to appear." *Id.* The *Hawley* panel's use of the terms "conclude" and "governed," undiluted by such language as "may not have been punishment," indicate a holding, not *dicta*.[5]

Rohde also notes that a subsequent prosecution was not at issue in *Hawley*. Nonetheless, the court's unequivocal conclusion that the § 3C1.1 enhancement "was . . . not punishment" suggests, if it does not dictate, the result in this case, which does involve a prosecution for the enhancing conduct.

Finally, Rohde argues that *Hawley* is unavailing because the government did not rely upon or even cite it in the district court. Failing to cite a specific case, however, even if precedential, does not invariably have the same consequence as failing to present an issue, particularly when the failure is that of

_____

[5]Were this panel inclined to engage in the business of labeling as *dicta* one of the two alternative grounds in *Hawley*, it would then confront defendant's failure to demonstrate why that label ought not adhere to the alternative which is innocuous to her theory, rather than to the alternative which undermines it.

the prevailing party. *Cf., e.g., Gowan v. United States Dep't of the Air Force*, 148 F.3d 1182, 1189 (10th Cir. 1998) (noting that court of appeals "may affirm on any ground supported by the record"). The government argued in the district court that indicting a defendant for perjury after a sentencing enhancement for obstruction of justice based on that perjury does not constitute double jeopardy. The government cited *Witte* and specifically argued its application to perjury. The government acknowledged that no reported case addressed the double jeopardy implications of a perjury enhancement; it simply failed to note that *Hawley* did address more generally the implications of a § 3C1.1 enhancement. These are not the makings of appellate preclusion.

Even were Rohde able to avoid *Hawley*, she could not distinguish *Witte* by differentiating § 3C1.1 from § 1B1.3. Several other circuits have applied *Witte* to § 3C1.1 enhancements for obstruction of justice. *See United States v. Grisanti*, 116 F.3d 984, 987 (2d Cir. 1997); *United States v. Ross*, 77 F.3d 1525, 1550 (7th Cir. 1996); *United States v. Bellrichard*, 62 F.3d 1046, 1051–52 (8th Cir. 1995); *United States v. Jernigan*, 60 F.2d 562, 564–65 (9th Cir. 1995).[6] Those decisions, however, all apply *Witte* summarily, without analyzing an argument premised on

---

[6]None of these cases involved obstruction by perjury. The distinction between obstruction by perjury and obstruction by other means, however, is only relevant to Rohde's multiple-prosecution argument, discussed in part II.B of this opinion. *See infra* at 13–19.

differentiating § 3C1.1 from § 1B1.3.  Such an argument is nonetheless unavailing.

Rohde's argument adopts the district court's two-part reasoning about temporality: (1) unlike a court that uses relevant conduct under § 1B1.3 to calculate a sentence, Rohde's sentencing court could not have premised its enhancement of her sentence under § 3C1.1 on aggravating circumstances of her robbery and firearm offenses, because her perjury did not precede or accompany those crimes; (2) the § 3C1.1 enhancement must therefore have been punishment for the perjury itself, barring further prosecution or punishment as double jeopardy.  *See Rohde*, 989 F. Supp. at 1155.  Similar reasoning, however, did not persuade the Court in *Witte*.

The Court determined that Witte's appeal was controlled by its pre- and post-Guidelines precedent, in which it had consistently rejected double jeopardy challenges to sentences based in part on "conduct arising out of the same criminal transaction" as the crime of conviction or on "a defendant's background."  *Witte*, 515 U.S. at 400.[7]  Justice Stevens argued in dissent that a sentencing court's use

[7]The Court extensively discussed and relied on its opinion in a particular pre-Guidelines case involving the same criminal transaction.  *See United States v. Witte*, 515 U.S. 389, 398–400 (following *Williams v. Oklahoma*, 358 U.S. 576 (1959)).  It also quoted its opinions in several cases involving criminal history under either the Guidelines or state recidivist statutes.  *See id.* at 400 (quoting *Nichols v. United States*, 511 U.S. 738 (1994); *Gryger v. Burke*, 334 U.S. 728 (1948); and *Moore v. Missouri*, 159 U.S. 673 (1895)) (other citations omitted).

of relevant conduct under § 1B1.3 bars further prosecution or punishment for that conduct because, unlike criminal history under § 4A1.1, which measures the character of the offender, relevant conduct measures only the character of the offense. *See id.* at 408–12 (Stevens, J., dissenting). Basing a sentence in part on relevant conduct, Justice Stevens concluded, thus serves only to punish the offense constituted by the relevant conduct. *See id.* The Court specifically rejected this argument. *See id.* at 402–03.[8] Minimizing the importance of temporality, the Court noted that "the difference between 'criminal history' and 'relevant conduct' is more temporal than qualitative, with the former referring simply to a defendant's past criminal conduct . . . and the latter covering activity arising out of the same course of criminal conduct as the instant offense." *Id.* at 402 (citations omitted).

Rohde's argument and the district court's reasoning similarly rely on a distinction that is "more temporal than qualitative." Rohde committed perjury after her crimes of conviction, not before or in the same general time period as those crimes. The pertinent difference, then, between the conduct underlying her

---

[8]The Court reasoned that relevant conduct and criminal history each relate to the character both of the offense and of the offender. *See Witte*, 515 U.S. at 403. "[W]hile relevant conduct . . . may relate to the severity of the particular crime," the Court reasoned, "the commission of multiple offenses in the same course of conduct also necessarily provides important evidence that the character of the offender requires special punishment." *Id.*

§ 3C1.1 enhancement, and conduct qualifying as criminal history under §§ 4A1.1–.3 or as relevant conduct under § 1B1.3, is merely temporal.

Despite that temporal distinction, her willingness to lie under oath, like a defendant's willingness to commit multiple offenses, "necessarily provides important evidence that the character of the offender requires special punishment." *See Witte*, 515 U.S. at 403. A criminal who perjures herself to escape responsibility for her crime poses a greater threat to society, and deserves less leniency, than one who does not. *See United States v. Dunnigan*, 507 U.S. 87, 97 (1993) (upholding constitutionality of sentence enhancements for perjury). While Rohde intended her perjury to benefit an accomplice, the resultant threat to society was no less imminent than had she lied to protect herself. She showed the same willingness as the defendant in *Dunnigan* to place an individual's interests above those of society and the criminal justice system by lying under oath. The perjury enhancement in this case, like that in *Dunnigan*, thus "further[ed] legitimate sentencing goals relating to the principal crime, including . . . retribution and incapacitation." *Id.*

By obstructing the prosecution of her accomplice, Rohde did not only show that her character deserved special punishment. She also aggravated the character of her charged offenses. *Cf. Witte*, 515 U.S. at 402–03 (discussing distinction between character of offender and character of offense). Her perjury aggravated

the character of her offenses as plainly as the commission of related, uncharged crimes aggravates the character of a defendant's charged offenses. If the prosecution of a crime is obstructed, then that crime becomes more dangerous to society than an otherwise identical crime whose prosecution is not obstructed. A crime whose prosecution is obstructed thus deserves greater punishment.

In the usual case, the convict who receives a § 3C1.1 enhancement will have obstructed the prosecution of his or her own crime. In this unusual case, Rohde's perjury obstructed the prosecution of Jones's offense, not her own. This makes the relation of her perjury to her underlying offense less immediately obvious. Rohde, however, has already unsuccessfully appealed her § 3C1.1 enhancement.[9] That failure precludes her from relying in this appeal on the unusual nature of her obstruction to avoid the general rule outlined above: a perjury enhancement punishes the underlying offense, not the perjury, because the perjury both reveals the bad character of the offender and aggravates the character

---

[9]Rohde argued that the § 3C1.1 enhancement was invalid because her perjury had not obstructed "the investigation, prosecution, or sentencing of *the instant offense,*" i.e., her offense. U.S.S.G. § 3C1.1 (emphasis added). A different panel of this court, however, upheld the enhancement. *See United States v. Alexander*, No. 97–4105, 1998 WL 380529, at *2 (10th Cir. July 1, 1998) (unpublished disposition). (Alexander is Rohde's new, married name; she declined, however, to move this court to recaption this appeal.) Rohde has properly conceded that she "cannot and does not use this appeal to collaterally attack the sentence enhancement."

of the offense. Because the perjury enhancement does not punish the perjury itself, Rohde's multiple-punishments argument fails.

B.    *The sentencing court's consideration of Rohde's perjury did not constitute a prosecution for double jeopardy purposes.*

While Rohde's sentence enhancement did not punish her perjury, the Double Jeopardy Clause would still require dismissal of the perjury indictment if the enhancement constituted a prosecution for perjury. This court, however, has specifically rejected the argument that a sentencing hearing in which a court based a sentence in part on relevant conduct constituted a *de facto* prosecution for the relevant conduct. *See United States v. Koonce*, 885 F.2d 720, 722 (10ᵗʰ Cir. 1989) (rejecting argument by dissenting panel member); *compare id*. at 722 (McKay, J., dissenting).

Rohde's attempt to distinguish *Koonce* rests on her interpretation of a special rule for sentence enhancements based on perjury established in *United States v. Dunnigan*, 507 U.S. 87 (1993). In *Dunnigan*, the Court held that "if a defendant objects to a [§ 3C1.1] sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the [standard federal] perjury definition." *Id.* at 95. Quoting a phrase from *Dunnigan*, Rohde argues that its requirement of an independent finding of perjury converts a sentencing hearing into a "surrogate for

-14-

a perjury prosecution." *Id.* at 97. Rohde's argument, however, ignores the purpose and context both of *Dunnigan*'s reference to a "surrogate . . . prosecution" and, more broadly, of its independent-findings rule.

In requiring independent findings, the Court was defusing the argument that a § 3C1.1 perjury enhancement unconstitutionally impairs a defendant's right to testify. *See id.* at 91–92, 96–97. Dunnigan argued that perjury enhancements burden the right to testify because they create a risk "that courts will enhance sentences as a matter of course whenever the accused takes the stand and is found guilty." *See id.* at 96. The Court agreed that not every accused who testifies and yet is convicted should incur a perjury enhancement, noting ways in which testimony may be inaccurate or unconvincing, yet not perjurious. *See id.* at 95. But the independent-findings rule, the Court then explained, dispels the risk that every such convict will receive an automatic enhancement. *See id.* at 96–97. The rule's purpose is thus to shield defendants in the exercise of their right to testify in their own defense.

The purpose of the ban on multiple prosecutions in double jeopardy jurisprudence, on the other hand, is to shield individuals from any danger that the government will use its superior resources to subject them to the fiscal and emotional burdens of repeated trials:

> [T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged

-15-

offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States*, 355 U.S. 184, 187–88 (1957).

A sentencing hearing at which a court considers a § 3C1.1 enhancement is obviously not a formal prosecution. Rohde, however, argues that this court should treat the hearing as a surrogate prosecution for double jeopardy purposes. Her implicit premise, therefore, is puzzling: when a sentencing court *protects* a defendant's exercise of the right to testify by making independent findings of perjury, it thereby *subjects* the defendant to the embarrassment, expense, ordeal, and compulsion referred to in *Green*. Even if the sentencing court's consideration of a defendant's perjury has some such consequences, they are not so burdensome as to require this court to treat the sentencing hearing as a *de facto* prosecution. The proceedings required by *Dunnigan* fall far short of being a full-blown collateral "prosecution." While the Court deemed it "preferable for a district court to address each element of the alleged perjury in a separate and clear finding," it held that an enhancement is proper "if . . . the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." *Dunnigan*, 507 U.S. at 95. The district

court's proceedings and findings in *Dunnigan*, which the Court approved, were far from extensive.[10]

Similarly, the sentencing court's proceedings in this case were not extensive. Rohde's counsel briefly attempted to explain the perjury,[11] inspiring an

---

[10]A jury convicted Dunnigan of conspiring to distribute cocaine after a trial at which six witnesses testified to her drug-trafficking activities, and she flatly contradicted almost all of their testimony. *See United States v. Dunnigan*, 507 U.S. 87, 89–90 (1993). The government requested a § 3C1.1 enhancement and, after argument from both sides, the court made a brief, almost summary finding:

> "The court finds that the defendant was untruthful at trial with respect to material matters in this case. The defendant denied her involvement when it is clear from the evidence in the case as the jury found beyond a reasonable doubt that she was involved in the conspiracy alleged in the indictment, and by virtue of her failure to give truthful testimony on material matters that were designed to substantially affect the outcome of the case, the court concludes that the false testimony at trial warrants an upward adjustment by two levels."

*Id.* at 91 (quoting district court). The Supreme Court held that, "[g]iven the numerous witnesses who contradicted respondent regarding so many facts on which she could not have been mistaken, there is ample support for the District Court's finding." *Id.* at 95–96.

[11][ROHDE'S ATTORNEY]: [S]omehow [Rohde] saw the good in [her fellow robbers Jones and Brown] and was trying to in essence save them. I think that the Court saw what happened when Arlyne testified. She clearly was attempting in a last-ditch effort to save Paul Jones because he was . . . facing life in prison under [the three-strikes-and-you're-out provision], and Arlyne abandoned all notions of what's good for her, what would be good for her children, and she could not pour gasoline on Paul's fire. That is it. I cannot explain what happened beyond that. I think a lot of her bad situations have arisen from loyalty to her friends, loyalty which knows no bounds.

equally brief comment by the prosecution.[12]  There followed a short colloquy

between the court and Ms. Rohde[13] and the court's succinct finding and comments

in imposing the enhancement.[14]  This court cannot equate the proceedings relating

[12][ASS'T U.S. ATT'Y]:  [Rohde's attorney said] that Ms. Rohde had been a model person while under pretrial supervision.  I would differ with that.
    It was less than three weeks ago when under that supervision she committed perjury. . . .
    [Long discussion of Rohde's uncharged criminal conduct]
    [S]he should not be given three points for acceptance [of] responsibility based upon the testimony that she provided during the trial.  She reneged on all aspects of responsibility for herself as it related to the carrying of the firearm and the participation of Paul Jones and I don't think . . ., based upon that testimony, that she is entitled to the three points . . . .  Clearly she should receive the two points for obstruction of justice under [section] 3C1.1 because it specifically states [that it applies to] committing, suborning or attempting to suborn perjury.

[13]THE COURT:  You don't have to answer these questions if you don't want to because apparently you're under indictment for perjury.  What in the world went wrong here in this courtroom in the trial of Paul Jones?  You took that witness stand and surprised me.  You surprised your lawyer, I would assume.
    MS. ROHDE:  It surprised me too.
    THE COURT:  You surprised yourself?
    MS. ROHDE:  I did. . . .  I have seen the good in Paul Jones before we got caught up in all of this.  Based on my involvement in the whole thing . . . I don't believe that he deserves a life sentence for what happened.  It breaks my heart to see it go that way.  I also have heard rumors of bad things that happen to people that tell bad things about people in courtrooms, and I was afraid of doing that, which is why I have never cooperated with the government.

[14]THE COURT: [Y]ou have only just made this significantly worse for yourself.  I cannot understand for the life of me, and perhaps I am being a little too harsh and maybe I do understand it at some level, and I can understand a problem with snitches in prison, but I don't understand quite how it comes through to being under subpoena and taking an oath and being required to tell the truth.  What you are before me today, Ms. Rohde, is one thing.  What you were on that witness stand three weeks ago was another.  I don't know you.  I don't know who you are. [A character reference] writes and claims that Arlyne Rohde is a

-18-

to perjury, which were scattered and decidedly secondary in importance to the other sentencing issues argued and addressed in the hearing, to a prosecution. Rohde cites no authority to suggest that *Dunnigan* sentencing proceedings are frequently extensive, grueling, or otherwise comparable to a prosecution. Nor has any other court treated the sentencing proceedings and findings required by *Dunnigan* as a *de facto* prosecution for double jeopardy or any other purpose.

Beyond misconstruing *Dunnigan*'s purpose, Rohde also quotes out of context the Court's reference to the § 3C1.1 enhancement as a "surrogate for a perjury prosecution." The Court used that phrase in *rejecting* Dunnigan's argument that perjury enhancements serve only the impermissible purpose of enabling the government to incarcerate a defendant for perjury while sparing it the time and expense of a separate prosecution. *See Dunnigan*, 507 U.S. at 97. The Court acknowledged that an enhancement based on perjury deters perjury in the same way as a separate perjury prosecution. *See id.* "But the enhancement,"

---

person of the highest integrity. I have a hard time squaring that with the person who lies under oath here to me. So I have difficulty with you, Ms. Rohde. I really feel badly for your family, for your daughters. [But] [w]e are punishing the crime.

   . . . .

I am finding that there is a two[-]point addition for obstruction of justice for lying on that witness stand. If you didn't lie on the witness stand that time, you lied before me when I took your plea. I am finished being mocked by you, Ms. Rohde. I know you feel sympathy for yourself today and I know you mean what you say, but you're being punished for what you did, not for how you feel today.

the Court reasoned, "is more than a mere surrogate for a perjury prosecution.  It furthers legitimate sentencing goals relating to the principal crime, including . . . retribution and incapacitation."  *Id.*

The Court was thus discussing the *purpose* of a perjury enhancement, and showing that it serves to measure how to punish and incapacitate the offender for the underlying offense, not just for the perjury.  To note that the enhancement has some purposes in common with a prosecution, and also serves additional purposes, is not to say that the enhancement *is* a *de facto* prosecution.

As noted, this court has rejected the argument that a sentencing court's consideration of relevant conduct constitutes a *de facto* prosecution for that conduct.  *See Koonce*, 885 F.2d at 722.  The only difference that Rohde notes between a sentencing court's consideration of relevant conduct under § 1B1.3 and its enhancement of a sentence for perjury under § 3C1.1 is the independent-findings requirement for perjury.  Nothing in *Dunnigan* suggests that the Court had that requirement in mind when it referred to a § 3C1.1 enhancement for perjury as "more than a mere surrogate for a perjury prosecution."  The Court's opinion, read as a whole, simply does not suggest that the independent-findings requirement converts a perjury enhancement, unlike other considerations of conduct beyond the charged offense, into a surrogate prosecution.

III.    CONCLUSION

The order of the district court dismissing the perjury indictment is

**REVERSED**.  The matter is **REMANDED** for further proceedings.