**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 5 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TERRY LYNN NICHOLS,

    Defendant - Appellant.

No. 01-1215

(D.C. Nos. 96-CR-68-M, 00-M-2027)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Chief Judge, and **BALDOCK** and **EBEL**, Circuit Judges.

---

Terry Lynn Nichols appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate and set aside his conviction and sentence. A jury convicted Nichols of conspiring to use a weapon of mass destruction against the Alfred P. Murrah Federal Building in Oklahoma City, in violation of 18 U.S.C. § 2332a. The jury also convicted Nichols of eight counts of involuntary manslaughter, in violation of 18 U.S.C. § 1112.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After the jury deadlocked during the death penalty phase, the district court sentenced Nichols to life imprisonment on the conspiracy count, and six years each on the manslaughter counts, with the sentences to run concurrently. We previously detailed the particulars of the crime in United States v. McVeigh, 153 F.3d 1166, 1176-79 (10th Cir. 1998), and need not repeat them here.

We granted certificates of appealability pursuant to 28 U.S.C. § 2253(c) on two issues: (1) whether Nichols was denied his right under Apprendi v. New Jersey, 530 U.S. 466 (2000) to a jury verdict on each essential element of the conspiracy charge; and (2) whether he is entitled to an evidentiary hearing to determine whether the Government violated Brady v. Maryland, 373 U.S. 83 (1963) by failing to turn over approximately 40,000 investigative "lead sheets." We affirm.

I.

Nichols argues we should vacate his conviction for conspiracy to use a weapon of mass destruction in light of Apprendi v. New Jersey, 530 U.S. 466 (2000). Nichols first contends § 2332a is facially unconstitutional under Apprendi because the statute exposes a defendant to the death penalty based on a nonjury finding that death resulted from the use of a weapon of mass destruction. Alternatively, Nichols contends the district court did not properly instruct the jury on the mental state required for each element of the

offense.  We address each of these arguments in turn.[1]

A.

Whether 18 U.S.C. § 2332a is facially unconstitutional is a question of law we

review de novo.  United States v. Pompey, 264 F.3d 1176, 1179 (10th Cir. 2001); United

States v. Kennedy, 225 F.3d 1187, 1193 (10th Cir. 2000).  At the time of the bombing,

§ 2332a provided as follows:

> (a) Offense.–A person who uses, or attempts or conspires to use, a weapon
> of mass destruction–
>
> > (1) against a national of the United States while such national is
> > outside of the United States;
>
> > (2) against any person within the United States; or

---

[1]  We save for another day the question of whether Teague v. Lane's anti-retroactivity rule bars a defendant from raising an Apprendi claim on collateral review. See Teague v. Lane, 489 U.S. 288 (1989) (new constitutional rules of criminal procedure will not be applicable to cases which have become final before new rules are announced, unless they fall within an exception); see also McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir. 2001) (holding "the new constitutional rule of criminal procedure announced in Apprendi does not apply retroactively on collateral review"); United States v. Moss, 252 F.3d 993, 1000-01 (8th Cir. 2001) (same); United States v. Sanders, 247 F.3d 139, 151 (4th Cir. 2001) (same); Jones v. Smith, 231 F.3d 1227, 1236 (9th Cir. 2000) (same).  Although the Supreme Court has indicated Teague retroactivity determinations should be made as a "threshold matter," see Penry v. Lynaugh, 492 U.S. 302, 329 (1989), the parties have not briefed the issue to our satisfaction, and the merits of Nichols' Apprendi claims are easily resolved.  Nor will we address whether Nichols' Apprendi claims are procedurally barred under United States v. Frady, 456 U.S. 152 (1982) (a defendant collaterally attacking his conviction based on trial errors to which he made no contemporaneous objection must show both "cause" and "prejudice").  The Government has not raised a Frady defense, and we decline to raise the issue sua sponte given the posture of this case.  See United States v. Talk, 158 F.3d 1064, 1067 (10th Cir. 1998).

(3) against any property that is owned, leased or used by the United States or by any department or agency of the United States, whether the property is within or outside of the United States,

shall be imprisoned for any term of years or for life, and if death results, shall be punished by death or imprisoned for any term of years or for life.

Both at trial and on direct appeal, Nichols argued "if death results" is an element of the offense to which a knowing mental state applies. We rejected that construction of the statute in United States v. McVeigh, 153 F.3d 1166, 1194-95 (10th Cir. 1998), and in Nichols' direct appeal. See United States v. Nichols, 169 F.3d 1255, 1260-61 (10th Cir. 1999).[2] We stated that by the plain language and structure of the statute, "the phrase 'if death results' is a sentencing factor rather than an element of the offense." McVeigh, 153 F.3d at 1194.

Nichols now argues (1) we are bound by our prior statement in McVeigh that "resulting death" is a sentencing factor; (2) because resulting death is a sentencing factor, § 2332a allows the judge to find by a preponderance of the evidence a fact that increases the maximum penalty to which Nichols was exposed; and (3) this result violates Apprendi's holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490.

---

[2] Because Nichols relied on McVeigh's prior resolution of these issues, we refer to McVeigh for the substantive analysis of Nichols' Apprendi claims. See Nichols, 169 F.3d at 1260-61.

4

We have rejected similar arguments concerning the facial constitutionality of federal drug statutes. See United States v. Cernobyl, 255 F.3d 1215 (10th Cir. 2001) (upholding facial constitutionality of 21 U.S.C. § 841). In Cernobyl, we noted that our pre-Apprendi cases holding that a judge may find drug quantities under 21 U.S.C. § 841(b)(1) by a preponderance of the evidence no longer had precedential value after Apprendi. Cernobyl, 255 F.3d at 1219. Likewise, McVeigh's characterization of "resulting death" as a sentencing factor does not render § 2332a facially unconstitutional. Apprendi is a superseding contrary decision by the Supreme Court that undermines McVeigh's precedential value regarding this point. See In re Smith, 10 F.3d 723, 724 (10th Cir. 1993) ("We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court."); Cernobyl, 255 F.3d at 1219. Unlike the statute at issue in Apprendi, § 2332a does not indicate whether the judge or jury is assigned the task of determining whether "death results," nor does it specify the burden of proof. Thus, Apprendi does not render § 2332a facially unconstitutional, it merely requires the Government to charge in the indictment, and the jury to find beyond a reasonable doubt, that death resulted. Here, the Government charged Nichols with conspiring to use a weapon of mass destructing resulting in death. The jury found, by special interrogatory, that death resulted and that those deaths were reasonably foreseeable. Apprendi requires no more.

5

B.

Nichols alternatively argues if § 2332a is facially constitutional, then "resulting death" must be an element of the offense. In McVeigh, we stated that "[i]n light of the nature of the offense at issue and the severity of the prescribed punishments," "the intent standard of 'knowingly' is appropriate for each of the elements of a § 2332a violation." Id. at 1194 (emphasis added). Hence, Nichols argues McVeigh requires a knowing mental state to attach to each and every element, including "resulting death." Because the jury was not instructed that Nichols must have known that death would result from the conspiracy, Nichols argues the jury did not find every element of the offense and we must vacate his conviction.

We rejected this argument in McVeigh and in Nichols' direct appeal. In addition to holding that "resulting death" is a sentencing factor, we went on to state–

> Further, even if the phrase "if death results" were to be construed as an
> element of the offense rather than a sentencing enhancement, it would not
> be an intent element but only an element of factual consequences. Nothing
> in § 2332a(a) links the "if death results" language of the statute to any
> scienter whatsoever.

McVeigh at 1195. While Apprendi undermines McVeigh's holding that "resulting death" is a sentencing factor that does not increase the Government's burden of proof, Apprendi has no effect on McVeigh's alternative holding. See Woods v. Interstate Realty Co., 337 U.S. 535, 537 (1949) ("[W]here a decision rests on two or more grounds, none can be relegated to the category of obiter dictum."); United States v. Rohde, 159 F.3d 1298, 1302

(10th Cir. 1998) (distinguishing between an alternate holding and dicta). We remain bound by the prior panel's construction of the statute. See Nichols, 169 F.3d at 1261 (referring to both of McVeigh's holdings on this point as binding precedent); In re Smith, 10 F.3d at 724.

Even if we were not bound by McVeigh, we would reach the same conclusion based on § 2332a's structure and language. Section 2332a describes the actions necessary to commit the offense in terms of volitional acts; a person must use, or attempt or conspire to use, a weapon of mass destruction against specified targets. In contrast, the statute describes the death penalty's applicability in terms of factual consequences.[3] A person guilty of committing this offense is subject to the death penalty if death results, not if he intentionally or knowingly caused, or attempted or conspired to cause death. We previously interpreted similar statutory language, and held the Government "need only show the defendants' illegal conduct resulted in bodily injury; not that the defendants

_____

[3] Nichols argues our reasoning in McVeigh compels us to find a knowing scienter attaches to "if death results" because there we stated that the serious penalties in § 2332a indicate the statute is not a strict liability crime. Thus, Nichols argues the most severe penalty, death, likewise cannot be imposed without the requisite mental state. We rejected a similar argument in McVeigh, noting that while the Government must prove a certain level of criminal intent to secure a death sentence, these necessary findings may be made at any stage of the proceedings. Id. at 1195. "Thus, 'intent to kill' need not be incorporated into the jury instructions during the guilt phase of a capital case if it is not an element of the charged crime." Id. at 1195 (emphasis added). Because we conclude no scienter attaches to "if death results" to determine guilt, the district court properly instructed the jury regarding the appropriate mental state at the guilt and death penalty phases respectively.

7

intended bodily injury." United States v. Woodlee, 136 F.3d 1399, 1405 (10th Cir. 1998) (interpreting 18 U.S.C. § 245(b)) (emphasis in original). In Woodlee, we based our conclusion in part on a "long line of cases interpreting the phrase 'if death results' under analogous statutes." Id. (gathering cases). We reaffirm this interpretation of "if death results." At oral argument, Nichols' counsel conceded Nichols' conviction and sentence violate Apprendi only if a knowing mental state attaches to "if death results." Because we reject this construction of the statute, we affirm Nichols' § 2332a conviction and life sentence.

II.

Nichols next contends he is entitled to an evidentiary hearing to determine if the Government violated its constitutional duty to disclose material exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963) by withholding approximately 40,000 Federal Bureau of Investigation (FBI) "lead sheets." FBI agents and other FBI personnel use a standard form colloquially referred to as "lead sheets" to record information that may be relevant to an investigation. Agents record on the lead sheet the source's identity, the method, date, and time of contact, and a narrative summary of what the source said. Agents also use lead sheets to document agent-to-agent communications. Agents conducting a follow-up investigation interview the source or others who may have more information. The agent conducting the interview will report what was said on a Form 302 if the information is thought to be relevant to the investigation, or in the form of an

"insert" if the information is of no apparent value. See United States v. Nichols, 242 F.3d 391, 2000 WL 1846225, at *1 (10th Cir. 2000) (unpublished).

Prior to trial, the Government provided the defense with the Form 302s, but did not turn over any lead sheets. Nichols' counsel discovered the lead sheets' existence for the first time during the prosecution's rebuttal case at trial, and moved for immediate production of similar material. The district court refused to address the matter during trial, and proceeded to verdict and through the death penalty phase.

After the verdict, Nichols moved for a new trial, alleging the Government violated its Brady and discovery obligations by failing to turn over lead sheets containing exculpatory or impeachment information. The Government informed the district court the FBI had approximately 50,000 lead sheets which the Government had not turned over to the defense. The FBI sorted the lead sheets into three categories: (1) agent-to-agent communications; (2) lead sheets concerning the identity or location of persons resembling John Doe number two sketches circulated after the bombing; and (3) all other lead sheets. The district court denied the new trial motion, but ordered the Government to produce the approximately 12,000 lead sheets in the third category. Based on this production, Nichols filed a supplemental motion for a new trial. The district court denied this motion. United States v. Nichols, 67 F. Supp. 2d 1198, 1202 (D. Colo. 1999). The district court also denied Nichols' requests for further discovery and an evidentiary hearing. Id.

Nichols directly appealed his conviction and sentence, but did not raise any Brady

9

or discovery claims in his direct appeal. We affirmed and the Supreme Court denied certiorari. United States v. Nichols, 169 F.3d 1255 (10th Cir.), cert. denied, 528 U.S. 934 (1999). Nichols also appealed the district court's denial of his new trial motion. Before we resolved Nichols' appeal of the new trial motion, Nichols filed the present § 2255 motion in district court. Nichols' Brady claim in his § 2255 motion relied on the same arguments and evidence that formed the basis of his new trial motion. We subsequently affirmed the district court's denial of the new trial motion. Nichols, 2000 WL 1846225, at *1. Based on our resolution of the Brady and discovery issues, Nichols withdrew his Brady claim in the § 2255 motion before the district court. Nichols then filed a petition for certiorari from our denial of the new trial motion, which the Supreme Court denied.

Subsequently, the Government revealed it had located additional evidence which had never been turned over to the defense. The new evidence consisted of approximately 1,000 Form 302s and inserts, as well as physical evidence. Although the Government contends this evidence contains no Brady material, the Government concedes it should have produced the evidence under the parties' reciprocal discovery agreement. Based on this latest round of disclosures, Nichols filed a petition for rehearing with the Supreme Court on his new trial motion. We next granted Nichols' request for a certificate of appealability on "the Brady issue" Nichols raised in his § 2255 motion. The Supreme Court subsequently denied Nichols' petition for rehearing on his new trial motion.

Nichols now argues the Government's late production of the 302s sheds new light

10

on his prior § 2255 <u>Brady</u> claim, which was based on the Government's failure to produce the lead sheets. He argues the Government's failure to turn over the 302s raises an inference the FBI's sorting and categorizing of the lead sheets cannot be trusted. He also argues the newly discovered 302s are evidence that the Government perhaps did not turn over all category three lead sheets. Further, Nichols argues that upon remand for review of the lead sheets, he also must be allowed to argue the relevance of the 302s because <u>Brady</u> contemplates a cumulative review of all withheld evidence. <u>See</u> <u>Banks v. Reynolds</u>, 54 F.3d 1508, 1518 (10th Cir. 1995) ("In evaluating the materiality of withheld evidence, . . . we review the cumulative impact of the withheld evidence; its utility to the defense as well as its potentially damaging impact on the prosecution's case.") (citing <u>Kyles v. Whitley</u>, 514 U.S. 419, 436-37 (1995)).

As an initial matter, we note that only the Government's prior failure to produce the lead sheets is currently before us. Nichols did not raise the 302 issue before the district court, nor does he raise the 302 issue before us as a separate substantive <u>Brady</u> claim.[4] With respect to the lead sheets, we considered and resolved this <u>Brady</u> claim on

---

[4] Any such attempt would have to overcome the requirements for a second and successive § 2255 motion. <u>See</u> 28 U.S.C. §§ 2255 & 2244(b)(2)(B) (requiring court of appeals panel to certify a successive petition contains either (1) newly discovered evidence that, if proven, would establish by clear and convincing evidence no reasonable jury would have convicted defendant of the offense; or (2) a previously unavailable new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court); <u>Calderon v. Thompson</u>, 523 U.S. 538 (1998) (motion to recall an appellate mandate for reconsideration in light of new claims or evidence is subject to § 2244(b)'s

(continued...)

11

Nichols' motion for a new trial. See Nichols, 2000 WL 1846225, at *3-7. "Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to § 2255." United States v. Prichard, 875 F.2d 789, 791 (10th Cir. 1989); see also United States v. Warner, 23 F.3d 287, 291 (10th Cir. 1994) (affirming district court's dismissal of § 2255 issues previously resolved on direct appeal). No relevant intervening change in the law has occurred. Instead, Nichols argues we should employ general "law of the case" principles, including the exceptions to that doctrine. "The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." McIlravy v. Kerr-McGee Coal Corp., 204 F.3d 1031, 1034 (10th Cir. 2000) (internal quotations and citations omitted). We have recognized three exceptions from this general rule: "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice." Id. (internal quotations and citations omitted). "Generally courts read these exceptions narrowly, requiring district courts to apply the law of the case unless one of the exceptions specifically and

---

[4](...continued)
restrictions on successive motions); Lopez v. Douglas, 141 F.3d 974 (10th Cir. 1998) (holding a Fed. R. Civ. P. 60(b) motion to vacate the judgment denying an initial § 2254 motion was an uncertified second or successive § 2254 motion).

12

unquestionably applies." United States v. Monsisvais, 946 F.2d 114, 117 (10th Cir. 1991) (internal quotations and citations omitted).

Even assuming all three exceptions are cognizable on a § 2255 motion, none apply here. Nichols argues the first exception applies because the newly-produced 302s substantially change the evidence. We disagree. Nichols' current Brady claim is identical to the claim we resolved in Nichols' prior motion. Nothing about the late production of the 302s changes the content of the lead sheets, and Nichols has not produced any evidence the FBI mischaracterized or wrongly withheld any lead sheets.

Nichols also argues our prior holdings are not the law of the case because they are clearly erroneous. In essence, Nichols seeks to overturn three rulings: (1) that the Government's failure to turn over the John Doe number two ("JD2") lead sheets did not constitute a Brady violation; (2) that the Government's failure to turn over all the lead sheets did not violate the parties' discovery agreement or the Jencks Act; and (3) that the district court did not abuse its discretion by refusing to hold an evidentiary hearing.

We resolved the JD2 lead sheets issue in Nichols' new trial motion. We stated–

[N]one of the JD2 evidence casts doubt on the overt acts committed by Mr. Nichols. . . . None of the lead sheets contend someone else committed any acts the evidence attributed to Mr. Nichols. Nor do the sheets cast doubt on the extent of his role because it was conceded he did not actually deliver the bomb with Mr. McVeigh. We simply cannot agree the existence of another participant reduces Mr. Nichols' relative culpability.

Even proof of the existence of a real John Doe #2 and of his participation would not contradict the government's indictment. It must be remembered the indictment charged Mr. Nichols conspired with Mr. McVeigh and with

13

> others unknown. The participation of another conspirator . . . therefore, does not relieve Mr. Nichols of culpability under the indictment. Thus, there is no reason to believe withholding this information from the defense violated Mr. Nichols' right to a fair trial.

Nichols, 2000 WL 1846225, at *4-5. Nichols fails to explain how the late production of the 302s changes this calculus. Nichols argues only that he could have used lead sheets to rehabilitate two witnesses. Both of these witnesses testified about the possible identity of JD2, and JD2's activities on the morning of the bombing. We fail to see how potential rehabilitation of these two witnesses alters this conclusion where even proof of JD2's existence would not undermine our confidence in the outcome of the trial.

Second, Nichols argues our prior ruling that the Government did not violate its discovery obligations with respect to the lead sheets was clearly erroneous. See id. at *6-7. We concluded the parties' reciprocal discovery agreement did not include the lead sheets, and the lead sheets were not Jencks Act material because "they were not relevant statements made by a testifying witness called by the prosecution." Id. at *7 (citing 18 U.S.C. § 3500(a)(b)(e) & Fed. R. Crim. P. 26.2(a, f)). Although the parties continue to factually dispute the parameters of the discovery agreement, "'[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" Winsor v. Hinckley Dodge, Inc., 79 F.3d 996, 1000 (10th Cir. 1996) (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985)). Further, the lead sheets are not witness statements as defined by the Jencks Act because they were internal reports prepared by FBI agents investigating the case. Our prior rulings on the

14

Government's discovery obligations were not clearly erroneous.

Third, Nichols requests a remand for an evidentiary hearing to develop the record regarding the contents of the remaining undisclosed lead sheets. We previously ruled the district court did not abuse its discretion by ruling on Nichols' new trial motion without an evidentiary hearing. Nichols, 2000 WL 1846225, at *7. The late production of the 302s does not undermine our prior conclusion. Nichols has not shown the FBI mischaracterized any of the lead sheets in category one or two, nor has he shown the Government withheld any category three lead sheets. He relies only on an inference of carelessness on the part of the FBI based on the late production of the 302s. We decline to determine a prior panel's resolution of this issue was clearly erroneous based on mere speculation.[5]

In sum, we previously considered and disposed of Nichols' claims regarding the lead sheets. The 302s, considered only as evidence to justify re-opening the lead sheets issue, do not undermine our prior rulings. Nichols may pursue the substantive 302 Brady issue on a second and successive § 2255 motion if he meets the requirements for such a motion.[6]

---

[5] Because we find our prior rulings were not clearly erroneous, we need not consider whether those rulings worked a manifest injustice. McIlravy, 204 F.3d at 1034 (noting the third exception to the law of the case doctrine requires that the prior decision was clearly erroneous and would work a manifest injustice).

[6] Nichols argues subjecting him to the requirements for a second and successive motion is unfair because the Government would benefit from its failure to timely produce

(continued...)

AFFIRMED.[7]

Entered for the Court,

Bobby R. Baldock
Circuit Judge

---

[6](...continued)
evidence where the Government waited until after his initial § 2255 was resolved before turning over the 302s. Fair or not, §§ 2255 and 2244(b) do not contain an explicit exception for situations where the Government has violated its discovery or Brady obligations.

[7] The Motion of the United States to Lodge Inspector General Report is denied.